# Exhibit A

ELECTRONICALLY FILED
9/4/2020 1:16 PM
02-CV-2020-901867.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

| | | |
|---|---|---|
| ANDREA DIXON, as Personal Representative of the ESTATE OF MAURICE JACKSON, deceased, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | CASE NO.: _____ |
| THE EDGEWOOD GROUP LIMITED PARTNERSHIP, a/k/a THE EDGEWOOD GROUP, LTD, d/b/a EDGEWOOD VILLAS APARTMENTS, a foreign business entity; CUMBERLAND REAL ESTATE SERVICES, INC., a foreign corporation; THE MITCHELL COMPANY, LLC, an Alabama domestic limited liability company; FICTITIOUS PARTIES A, B, C and D, are those persons or firms whose identities are presently unknown but who will be added by amendment once ascertained, who, in any capacity, including, but not limited to, owner, lessor, lessee, contractor, vendor, principal, agent, general or limited partner, shareholder, and limited liability company member and/or individual, had a common law and/or statutory duty and/or contractual obligation at all times material to inspect and/or perform maintenance at Edgewood Villas Apartments including, but not limited to, preparing individual apartments for rental and/or occupancy by new tenants and/or to regularly maintain apartment fixtures and appliances, | * * * * * * * * * * * * * * * * * * * * * * * * * * * | **JURY TRIAL DEMANDED** |

including fire/smoke detectors;                      *
FICTITIOUS PARTIES E, F, G, H,                      *
are those persons or firms whose                   *
identities are presently unknown but               *
who will be added by amendment                     *
once ascertained, who, in any                      *
capacity, including, but not limited to,            *
owner, lessor, lessee, contractor,                 *
vendor, principal, agent, general or               *
limited partner, shareholder, and                  *
limited liability company member                   *
and/or individual, had a common law                *
and/or statutory duty and/or                       *
contractual obligation at all times                *
material to perform inspections of the             *
apartment units at Edgewood Villas                 *
Apartments to determine, among                     *
other things, whether any individual               *
apartment, including its fixtures and              *
appliances, including, but not limited             *
to, fire/smoke detectors, was                      *
reasonably safe for human occupancy                *
and habitability and in compliance                 *
with laws, ordinances, regulations                 *
and code requirements; and                         *
FICTITIOUS PARTIES I, J, K, L, are                 *
those persons or firms whose                       *
identities are presently unknown but               *
who will be added by amendment                     *
once ascertained, who, in any                      *
capacity, including, but not limited to,            *
owner, lessor, lessee, contractor,                 *
vendor, principal, agent, general or               *
limited partner, shareholder, and                  *
limited liability company member                   *
and/or individual, owned and/or                    *
managed the apartment complex                      *
known as Edgewood Villas                           *
Apartments located at 1601 Neshota               *
                                                   *

Drive, Mobile, Alabama, at any time        *
material to the Complaint,                 *
                                           *
                                           *
Defendants.                                *

## COMPLAINT FOR WRONGFUL DEATH

ANDREA DIXON, as Personal Representative of the ESTATE OF MAURICE JACKSON, deceased, and as mother of MAURICE JACKSON, hereby brings the following Complaint for WRONGFUL DEATH pursuant to Title 6-5-410 **Code of Alabama** (1975) against the Defendants, THE EDGEWOOD GROUP LIMITED PARTNERSHIP, a/k/a THE EDGEWOOD GROUP, LTD, d/b/a EDGEWOOD VILLAS APARTMENTS, a foreign business entity; CUMBERLAND REAL ESTATE SERVICES, INC., a foreign corporation; THE MITCHELL COMPANY, LLC, an Alabama limited liability company; and FICTITIOUS PARTIES A, B, C, D, E, F, G, H, I, J, K, L, as further described herein (all Defendants collectively referred to as "Defendants"), jointly and separately, as follows:

## PARTIES

1.    Plaintiff, Andrea Dixon, is the mother of Maurice Jackson, deceased. She is also the duly appointed Personal Representative of the Estate of Maurice Jackson, deceased, pursuant to Letters of Administration granted to her by the Probate Court of Mobile County, Alabama.  See, Letters of Administration, attached

hereto as Exhibit "A" and incorporated by reference.  As Personal Representative of the Estate of Maurice Jackson, deceased, Andrea Dixon is authorized to bring this action for Wrongful Death pursuant to Title 6-5-410 **Code of Alabama** (1975).

2.      Defendant, The Edgewood Group Limited Partnership, a/k/a The Edgewood Group, LTD, d/b/a Edgewood Villas Apartments (hereinafter, "the Edgewood Group"), was, at all times material, and is a foreign business entity that is qualified to do business in Alabama with its principal place of business located at 608 Gallatin Road North, Madison, Tennessee.  The Edgewood Group owns, operates and/or manages the Edgewood Villas Apartments located at 1601 Neshota Drive, Mobile, Alabama (hereinafter referred to as "Edgewood Villas") and did so at the time of Maurice Jackson's death. At all times material to the Complaint, The Edgewood Group had a duty and responsibility, among other things, to provide apartment homes to its tenants, including Maurice Jackson, that were fit for habitability and to ensure that Edgewood Villas apartment units had "good and safe" electrical fixtures, equipment and appliances, including functional fire/smoke detectors that met all applicable standards, statutory and code requirements.

3.      Defendant, Cumberland Real Estate Services, Inc. (hereinafter, "Cumberland"), at all times material, and is a foreign corporation with its principal place of business located at 2110 Blair Boulevard, Nashville, Tennessee. Cumberland owns, operates and/or manages the Edgewood Villas and identifies

itself (under the name "Cumberland Real Estate") as "landlord" or "lessor" with respect to the rental of apartment unit #42 of Edgewood Villas Apartments to Andrea Dixson's son, Maurice Jackson and did so at the time of Maurice Jackson's death. See "Edgewood Villas Apartments Rental Agreement" (hereinafter referred to as "Lease"), attached hereto as Exhibit "B", p. 9 [Bates Number "Maurice Jackson (19-345) 000010], and incorporated by reference as if fully set forth herein.  Exhibit "B", as attached, contains all pages of the Lease contract between Maurice Jackson and the Edgewood Group and/or Cumberland.  At all times material to the Complaint, Cumberland had a duty and responsibility, among other things, to provide apartment homes that were fit for habitability and to ensure that apartment units had "good and safe" electrical fixtures, equipment and appliances, including functional fire/smoke detectors that met all applicable standards and code requirements.  Cumberland acted "individually", and as agent for its principal, The Edgewood Group, such that The Edgewood Group is vicariously liable for Cumberland's wrongful acts and omissions/conduct.  Further, Plaintiff's decedent, Maurice Jackson, was a third-party beneficiary of all contracts and agreements between The Edgewood Group and Cumberland.

4.      Defendant, The Mitchell Company, LLC (hereinafter, "the Mitchell Co."), was, at all times material, and is an Alabama limited liability company with its principal place of business located at 41 W. Interstate 65 Service Road N., Suite

300, Mobile, Alabama.  The Mitchell Co., "individually", and as agent for The Edgewood Group, Cumberland, and/or one or more of the Fictitious Parties identified herein, on information and belief, managed or operated Edgewood Villas at the time of Maurice Jackson's death.  The Edgewood Group and/or Cumberland and/or one or more of the Fictitious Parties, jointly and separately, are vicariously liable for the wrongful acts or omissions/conduct of The Mitchell Co.  At all times material to the Complaint, The Mitchell Co. had a duty and responsibility, among other things, to provide apartment homes that were fit for habitability and to ensure that apartment units had "good and safe" electrical fixtures, equipment and appliances, including functional fire/smoke detectors that met all applicable standards and code requirements.  Further, Plaintiff's decedent, Maurice Jackson, was a third-party beneficiary of all contracts and agreements between The Edgewood Group, Cumberland, The Mitchell Co., and/or one or more of the Fictitious Parties.

5.      Defendants, Fictitious Parties A, B, C and D, are those persons or firms whose identities are presently unknown but who will be added by amendment once ascertained, who, in any capacity, including, but not limited to, owner, lessor, lessee, contractor, vendor, principal, agent, general or limited partner, shareholder, and limited liability company member and/or individual, had a common law and/or statutory duty and/or contractual obligation at all times material to inspect and/or

perform maintenance at Edgewood Villas including, but not limited to, preparing individual apartments for rental and/or occupancy by new tenants and/or to regularly inspect and/or maintain apartment fixtures and appliances, including fire/smoke detectors.  Fictitious Parties A, B, C, and D acted individually, and/or as agent(s), servant(s) and employee(s) of one or more of the named Defendants herein.

6.      Defendants, Fictitious Parties E, F, G, H, are those persons or firms whose identities are presently unknown but who will be added by amendment once ascertained, who, in any capacity, including, but not limited to, owner, lessor, lessee, contractor, vendor, principal, agent, general or limited partner, shareholder, and limited liability company member and/or individual, had a common law and/or statutory duty and/or contractual obligation at all times material to perform inspections of the apartment units at Edgewood Villas to determine, among other things, whether any individual apartment, including its fixtures and appliances, including, but not limited to, fire/smoke detectors, was reasonably safe for human occupancy and habitability, and in compliance with laws, ordinances, regulations and code requirements.  Fictitious Parties E, F, G, and H acted individually, and/or as agent(s), servant(s) and employee(s) of one or more of the named Defendants herein.

7.      Defendants, Fictitious Parties I, J, K, L, are those persons or firms whose identities are presently unknown but who will be added by amendment once

ascertained, who, in any capacity, including, but not limited to, owner, lessor, lessee, contractor, vendor, principal, agent, general or limited partner, shareholder, and limited liability company member and/or individual, owned and/or managed Edgewood Villas.   Fictitious Parties I, J, K, and L acted individually, and/or as agent(s), servant(s) and employee(s) of one or more of the named Defendants herein.

8.    The acts and/or omissions of Defendants, jointly and severally, combined and concurred to cause the death of Maurice Jackson.

## JURISDICTION AND VENUE

9.    The claims brought herein are for Wrongful Death pursuant to Title 6-5-410 **Code of Alabama** (1975).   The value of the claim exceeds the minimal jurisdictional limits of the Circuit Court of Mobile County, Alabama.

10.    All of the Defendants either reside in, do business in or otherwise have minimum contacts with the State of Alabama.   The conduct and events complained of herein, including the death of Plaintiff's decedent, Maurice Jackson, occurred in Mobile County, Alabama.   Therefore, jurisdiction and venue are proper in the Circuit Court of Mobile County.

## FACTS

11.    Plaintiff adopts and re-states the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

12.     On or about December 13, 2018, Maurice Jackson ("Maurice") entered into a lease of an apartment unit (#42) at Edgewood Villas in Mobile, Alabama.  See Exhibit "B", Lease.

13.     The Lease was signed by Maurice and by Yolanda Powers, as agent for "Cumberland Real Estate", which, on information and belief, was used as an abbreviation of the name of an owner and/or lessor, Defendant, "Cumberland Real Estate Services, Inc."

14.     At all times material to the allegations of this Complaint, Maurice was a lessee of The Edgewood Group and/or Cumberland pursuant to the Lease.

15.     On the morning of June 13, 2019, a fire occurred on the stove-top in the kitchen within Maurice's apartment home at Edgewood Villas.

16.     At or about the time that the fire began, Maurice was inside of his apartment, asleep in his bedroom.

17.     The apartment was ostensibly equipped by the Defendants, jointly and separately, with a solitary FireX Model GC ionization smoke detector that was affixed to an interior hall-way wall of Maurice's apartment home.  There was no water sprinkler or dry-chemical fire suppression system within the apartment unit.

18.     The primary purpose of a fire/smoke detector is to warn individuals, like Maurice, of the presence of fire. The FireX Model CG does this by first detecting the presence of smoke in its ionization chamber and then by sounding a loud, audible

alarm signal.  By such means, the fire/smoke detector enables the individual to be alerted to a fire event and, being thus warned, to take action to escape harm or death. At its core, a fire/smoke detector is a safety device that is designed to protect and save human life.

19.     Applicable state and municipal law and ordinances, and applicable fire codes, require an apartment owner or landlord doing business in Mobile, Alabama, to provide and maintain in good and safe working order operational fire/smoke detectors in apartment homes that it rents to its tenants, like Maurice.  These statutory and code requirements are designed and enacted to protect and save human life.

20.     Title 35-9A-204 **Code of Alabama** (1975) imposes standards of habitability and establishes minimum duties imposed on owners and/or landlords under Alabama law.  "Generally, duties of repair and maintenance of the dwelling unit…are imposed on the landlord by this section." *Id*., Comment.  Specifically, §§ 35-9A-204(a)(1); (2); and (4) mandate that landlords comply with "the requirements of applicable building and housing codes materially affecting health and safety"; to "make all repairs and do whatever is necessary to put and keep the premises in a habitable condition", and, "maintain in good and safe working order and condition all electrical,…and other facilities and appliances,…. supplied or required to be supplied by the landlord."

21.     A fire/smoke detector is a fixture, equipment or appliance that "materially [affects] health and safety".

22.     The City of Mobile, by Ordinance, adopted the 2012 Edition of the International Fire Code (hereinafter, "IFC").  Mobile City Ordinances, Ch. 22, Art. I, Fire Prevention Code, §22-1.

23. The IFC, and therefore the City of Mobile by Ordinance, requires apartment owners, managers, operators and/or landlords to install and maintain functional fire/smoke detectors in apartment homes that are leased to members of the public like Maurice.  IFC §§ 107.1; 1103.8; 1103.81.

24.     The duty and responsibility to maintain the fire/smoke detectors to ensure functionality (*i.e*., that it is in "good and safe working order…") under the IFC is placed exclusively upon the owner of the building.  IFC §109.2.

25.     Additionally, the Fire Safety Ordinance of the City of Mobile, Alabama, mandates, "[T]he *owner* of the *premises* shall provide and maintain such fire safety facilities and equipment in compliance with these requirements.  A person shall not…permit another person to occupy any *premises* that do not comply with the requirements of this chapter." Mobile City Ordinances, Ch. 52, Art. I, Property Maintenance Code; Ch. 7, Fire Safety Requirements, §701.2 (emphasis in original). The City of Mobile Ordinances require an apartment owner to install and maintain smoke alarm(s) in apartment units. See, *e.g*., §704.2.1.2.

26.     The duties imposed on the owner/landlord by the IFC [and therefore by § 35-9A-204(4)], as well as those imposed by the City of Mobile Ordinance on fire safety (§701.2), to provide maintain and maintain an operational fire/smoke detector in leased premises are non-delegable duties under Alabama law.  See, *e.g*., § 35-9A-204 **Code of Alabama** (1975), Comment, "Except as specifically provided, these obligations may not be waived."

27.     The FireX Model GC smoke detector that was affixed to an interior hall-way wall of Maurice's apartment home was, at all times material, hard-wired into the electrical system of the apartment building that housed Maurice's apartment unit.

28.     Although affixed to the interior hall-way wall, the FireX Model GC smoke detector was detachable from its wall mounting bracket by simply grasping and twisting it.  Once detached from the mounting bracket, the FireX Model GC smoke detector unit remains connected by electrical wire into the electrical system of the apartment.

29.     Upon removal of the smoke detector from its wall mounting bracket, one may read information about the FireX Model GC smoke detector printed on its back or reverse side, such as manufacturer name, model, and date of manufacture, among other things.

30.    The FireX Model GC fire/smoke detector located in Maurice's apartment home at the time of the fire was not a battery-operated fire/smoke detector. In fact, the smoke detector was not equipped with, and did not utilize, batteries for any purpose, including as a back-up power source.

31.    As provided and installed by Defendants, jointly and separately, in Maurice's apartment home, the FireX Model GC fire/smoke detector was an electrical fixture, equipment or appliance in the apartment unit within the meaning of § 35-9A-204(4) **Code of Alabama** (1975), as well as all applicable City of Mobile Ordinances and fire codes.

32.    There was sufficient electrical power to the FireX GC fire/smoke detector within the apartment at the moment in time that the fire began, and for a period of time thereafter, based upon the wiring conditions then existing in the apartment building.

33.    It is conclusively recognized within the fire/smoke detector industry that the useful life of a smoke detector is no more than ten (10) years.  Because of internal component degradation over time (whether the smoke detector is being used or not), smoke detectors that are older than ten (10) years are at risk to fail when needed most: during fire events.  The longer a smoke detector is in use beyond ten (10) years, the greater the risk of failure.  Thus, industry standards *mandate* the replacement of in-use fire/smoke detectors that are ten (10) years old.  Industry

standards further require that in-use smoke detectors be regularly inspected and maintained to not only confirm functionality but to also ensure that the device is within its ten (10) year useful life-span.

34.   The age of any given fire/smoke detector is easily discernable as the manufacture date of the device is stamped upon its back or reverse side by the manufacturer.

35.   The user manual for the FireX Model GC smoke detector states, "Smoke alarms **must be replaced** every ten years.  See date code on back of smoke alarm to determine age." (Emphasis added.) The user manual for the FireX GC model smoke detector that was in use in Maurice's apartment home at the time of the fire was, and is, readily available for information by Defendants, jointly and separately, on the internet. See, https://www.cableorganizer.com/images/firex/406-installation-manual.pdf.

36.   The FireX GC fire/smoke detector in Maurice's apartment home at the time of the fire was manufactured on or about July 8, 2002, as evidenced by the date of manufacture stamp on its back.  See, Photograph, Exhibit "C".   The FireX GC fire/smoke detector in Maurice's apartment home was approximately 17 years old at the time of the fire.

37.   The FireX GC fire/smoke detector was *seven (7) years* beyond its useful life at the time of leasing and when the fire occurred and should have not been in

use. This fact could have been determined easily by the Defendants, jointly and separately, by simply removing it from its wall mounting bracket, and observing the manufacture date on the back of the device.

38.     Defendants, jointly and separately, consciously knew and appreciated the importance to life and safety of having a functional fire/smoke detector in Maurice's apartment home and the deadly consequences that could result if the fire/smoke detector was not inspected, maintained and changed out over time to reasonably ensure functionality.

39.     Defendants, jointly and separately, knew or should have known that the FireX GC fire/smoke detector in Maurice's apartment home was woefully out-of-date at the time he signed the Lease in December 2018; that the device was non-functioning (or at grave risk of failure due to its age); that it required removal and replacement by an up-to-date, functional device; and that Maurice Jackson should have been warned about its expired useful-life age and non-functioning condition.

40.     Defendants, jointly and separately, had duties to inspect and maintain the FireX GC fire/smoke detector in Maurice's apartment home before and during the remaining six-months of Maurice's tenancy (and life) to ensure that it was not beyond its useful life-span; that it was in "good and safe working order"; and, upon inspection, to find that it was "expired" and/or not functional, and replace it. Failing that, Defendants, jointly and separately, had a duty to warn Maurice Jackson about

its expired useful-life age and non-functioning condition which they did not do.  All Defendants, jointly and separately, breached all of those duties, among others.

41.    The FireX GC fire/smoke detector in Maurice's apartment home did not sound any alarm signal during the fire event due to its age and non-functioning condition.  As a consequence, there was no warning by audible signal from the device to alert Maurice to the presence of fire or the deadly accumulation of smoke within his apartment home at any time during the fire event.

42.    As a consequence of the smoke detector's non-functioning condition, lethal levels of "smoke" (*i.e.*, airborne particulates, including plastics, and gases, and carbon monoxide) accumulated within Maurice's home with no warning to Maurice.

43.    At no time did any of the Defendants inform Maurice Jackson that the FireX GC fire/smoke detector in his apartment home was seven (7) years out-of-date and/or non-functional and/or not within statutory or code requirements.

44.    Relying on the efficacy of a FireX GC fire/smoke detector that was provided and installed by Defendants, jointly and separately, in his apartment home, and, not knowing that the fire/smoke detector was seven (7) years out-of-date and non-functional, Maurice Jackson, who was 23 years of age, suffocated and died by smoke inhalation in his bedroom, alone.

## COUNT ONE
## ALABAMA WRONGFUL DEATH
## TITLE 6-5-410 CODE OF ALABAMA (1975)

45.     Plaintiff adopts and re-alleges the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

46.     Defendants, jointly and separately, had common law, statutory, and direct and/or third-party contractual duties to Maurice Jackson to provide, inspect and maintain his apartment home with a non-defective and functional smoke detector.

47.     Defendants, jointly and separately, negligently and/or wantonly breached their duties to Maurice Jackson to provide, inspect and maintain his apartment home with a non-defective and functional smoke detector.

48.     As a proximate result of the Defendants' joint and several breaches of their duties to Maurice Jackson, his apartment home had a defective and non-functional fire/smoke detector, a fact unknown to him.  Consequently, Maurice Jackson was not warned or alerted to the presence of fire and/or smoke in his apartment home on the morning of June 13, 2019, during a time when he could have taken action to save himself.  Maurice Jackson suffocated due to smoke inhalation, and was killed.

49.     Defendants, jointly and separately, were required by statute, ordinance and fire codes to provide and maintain the habitability of Maurice Jackson's

apartment home and to provide and maintain at all times a non-defective and functional smoke detector inside the home.  Defendants, jointly and separately, negligently and/or wantonly breached their duties to Maurice Jackson to provide and maintain the habitability of his apartment home and to provide and maintain a non-defective and functional smoke detector.  Consequently, Maurice Jackson was not warned or alerted to the presence of fire and/or smoke in his apartment home on the morning of June 13, 2019, during a time when he could have taken action to save himself.  Defendants, jointly and separately, are *per se* liable to Plaintiff for their negligent and/or wanton breaches of these non-delegable laws and duties.

50.     Defendants, jointly and separately, were required by direct and third-party contract(s), statutes, ordinances and fire codes to provide and maintain Maurice Jackson's apartment home with a non-defective and functional smoke detector.  Defendants, jointly and separately, knew or should have known that the FireX GC fire/smoke detector was seven (7) years out-of-date, defective and non-functional.  Defendants, jointly and separately, negligently and/or wantonly failed to warn Maurice Jackson of the defective and non-functioning FireX GC fire/smoke detector located in his apartment.  Consequently, Maurice Jackson was not warned or alerted to the presence of fire and/or smoke in his apartment home on the morning of June 13, 2019, during a time when he could have taken action to save himself. Relying on the efficacy of the FireX GC fire/smoke detector installed by Defendants,

jointly and separately, in his apartment home, that was, unknown to him, defective and non-functional, Maurice Jackson was killed by smoke inhalation.

51.    Defendants, jointly and separately, hid or concealed from Maurice Jackson the fact that the FireX GC fire/smoke detector on the hallway wall of his apartment home was seven (7) years out-of-date, defective and non-functional. Consequently, Maurice Jackson was not warned or alerted to the presence of fire and/or smoke in his apartment home on the morning of June 13, 2019, during a time when he could have taken action to save himself.  Relying on the efficacy of the FireX GC fire/smoke detector installed by Defendants, jointly and separately, in his apartment home, that was, unknown to him, non-functional, Maurice Jackson was killed by smoke inhalation.

52.    Defendants, jointly and separately, acted with a conscious disregard for Maurice Jackson's rights and safety.  Therefore, as a proximate result of Defendants' joint and several wantonness, Maurice Jackson's apartment home was equipped with a defective and non-functional fire/smoke detector.  Consequently, Maurice Jackson was not warned or alerted to the presence of smoke and/or fire in his apartment home on the morning of June 13, 2019, during a time when he could have taken action to save himself.  Maurice Jackson suffocated due to smoke inhalation, and was killed.

53.     Plaintiff, Andrea Dixon, as Personal Representative of the Estate of Maurice Jackson, deceased, hereby claims all damages as the jury may assess under Alabama law for the Wrongful Death of her son, Maurice Jackson.

**WHEREFORE**, premises considered, pursuant to Alabama law, Andrea Dixon prays the Court to empanel a jury to examine the evidence and to enter individual  judgments in favor of the Plaintiff and against the Defendants for their joint and several wrongful conduct for such Wrong Death damages as it may assess, as mandated by the Alabama Legislature, to punish and deter the conduct that gave rise to the death of Maurice Jackson, in excess of the Court's jurisdictional limits, plus interest and costs of Court.

### PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

Respectfully submitted on September 4, 2020.

*/s/Charles J. Potts* _____
DONALD M. BRISKMAN (BRI014)
CHARLES J. POTTS (POT007)
Attorneys for Plaintiff, Andrea Dixon, as
Personal Representative of the Estate of
Maurice Jackson, deceased.

OF COUNSEL:

**BRISKMAN & BINION, P.C.**
Post Office Box 43 (36601)
205 Church Street (36602)
Mobile, Alabama
*T*:  251.433.7600

*F*:  251.433.4485
dbriskman@briskman-binion.com
cpotts@briskman-binion.com

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL, RETURN
RECEIPT REQUESTED, AT THE FOLLOWING ADDRESSES:**

The Edgewood Group Limited Partnership
a/k/a The Edgewood Group, LTD
c/o Thomas A. Cadell, Registered Agent
230 East Moulton Street
Decatur, AL  35602

Cumberland Real Estate Services, Inc.
c/o Bert T. Lyles, Registered Agent
2110 Blair Boulevard
Nashville, TN  37212-4902

The Mitchell Company, LLC.
c/o Donald P. Kelly, Jr., Registered Agent
41 W. Interstate 65 Service Road N., Suite 300
Mobile, AL 36608

EXHIBIT A

ELECTRONICALLY FILED
9/4/2020 1:16 PM
02-CV-2020-901867.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

**THE STATE OF ALABAMA**                    **COURT OF P**

**COUNTY OF MOBILE**                        **CASE NO.    2020-0350**

## LETTERS OF ADMINISTRATION

Letters of Administration of the Estate of MAURICE TOBIAS JACKSON, are hereby granted to ANDREA L DIXON, who has duly qualified and given bond as such Personal Representative and is authorized to administer such estate with authority to take actions as set forth in §43-2-830, et seq. (1975). The powers and duties of said Personal Representative specifically include, but are not limited to, gathering and retaining estate assets, preparing an inventory of estate assets, paying taxes, uncontested claims, fees, and expenses, including court costs, incident to the administration of the estate. The authority of the Personal Representative is restricted as follows:

**Restrictions:**

**(1) With the exception of wrongful death matters, the Personal Representative must obtain approval of any litigation settlement and shall not distribute any monies or estate assets to heirs, legatees, and/or beneficiaries resulting from litigation or settlement of litigation without prior Court approval.**

**(2) Personal Representative must immediately report to the Court the receipt of any monies or assets which were not reported in the initial inventory and/or are received while these Letters are in effect.**

**(3) Personal Representative shall not sell, mortgage, or lease real or personal property of the estate without prior Court approval.**

Ordered this 25th day of August, 2020.

_____
DON DAVIS, Judge of Probate

# EXHIBIT B

ELECTRONICALLY FILED
9/4/2020 1:16 PM
02-CV-2020-901867.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## Edgewood Villas Apartments
## Rental Agreement

**1. PARTIES**

This rental agreement made **13th** day of **December 2018** between **EDGEWOOD VILLAS** (hereinafter referred to as Lessor) **Maurice T. Jacosn.** (hereinafter referred to as Lessee(s)).

WITNESSETH:

**2. PREMISES**

That in consideration of the representations made in the application filed by the Lessee and the conditions and covenants herein set forth, the Lessor hereby leases to the Lessee the following described property:
Apartment No. **#042** at **1601 NESHOTA DR., MOBILE, AL  36605**
for use by Lessee as a private residence only.

**3. TERM**

This rental agreement is for a term of **_12 months_**, commencing on **the 13th** of **December** and ending on the last calendar day of **November 30, 2019.** Rent shall include water. **Gas and Electric service to be paid by the tenant. Stove and refrigerator provided Edgewood Villas.**

**4. RENT**

Lessee agrees to pay to Lessor a rental sum of **Six Thousand Four Hundred & Eighty ($6480.00) dollars** payable in monthly installments of **Five Hundred and Forty ($540.00) Dollars,** each to be due and payable, respectively on the first day of **January 2019** and on the first day of each month thereafter. All rental payments are to pay at the Resident Manager's Office or at such place as Lessor may designate. Such rental payment is to make by check, money order or bank cashier's check. Cash is not acceptable for any payments due. The Lessor will not accept payment from any other source other than the Lessee.

**5. PRORATED RENT**

It is understood and agreed that Lessee is taking possession of the premises on the **13th** of **December** is to pay the sum of **($0.00) Dollars** rent, from that day through the last day of **November 2018.**

**6. LATE CHARGES AND RETURNED CHECKS**

The Lessee agrees to pay a late charge of **_Forty-five dollars_** ($**45.00**) if a monthly installment is received after the fifth (5th) day of each month. Regardless of the day of the week on which the fifth (5th) may occur and regardless of whether the fifth (5th) is a holiday or other non-business day, rent will be considered delinquent if received after the fifth (5th) day of the month. A night drop has been provided at the office of the Lessor for the convenience of the Lessee for holiday and after-hours delivery of the rent and rents deposited after the fifth (5th) day of the month will be considered late. **No personal checks are accepted.**

**7. DEPOSITS**

At the time of execution of this rental agreement Lessee has deposited with Lessor, the receipt of which is hereby acknowledged, the sum of **$0.00** security deposit, which is to be held by Lessor as a guarantee for the full and faithful performance of all the terms and conditions of the rental agreement by Lessee. Lessor will deposit these funds in an account, which is a separate and noninterest bearing account. This deposit is not rent and shall never be applied by the Lessee as payment in whole or in part of any rental payments due under the rental agreement. In the event of any violation of the terms of the rental agreement made by the Lessee, this security deposit, or a portion thereof, may be retained and offset against any damages due Lessor.

**SECURITY DEPOSIT RETURN**

The Lessor shall not be obligated to release the security deposit unless the following conditions are met:
1. Full term of the rental agreement has expired.
2. Thirty (30) days written notice is given by the Lessee to the Lessor.
3. There is no damage to the premises.
4. The premises are clean.
5. There are no unpaid charges or rent.
6. All keys have been returned.
7. A forwarding address has been left with management.

**SECURITY DEPOSIT DEDUCTIONS**

At the expiration of the term of this rental agreement and surrender of the leased premises, the balance, if any, of said security deposit will be returned to Lessee in accordance with the provisions of Alabama law after deducting there from:
1. Apartment cleaning charges.
2. The cost of repairing any damage to the premises, furnishings or equipment or the cost of the replacement of furnishings or equipment removed from the premises or damaged beyond repair.

If the above deductions exceed the amount of the security deposit, the excess shall promptly become due and payable by the Lessee.

**8. PET PROVISIONS**

A. It is hereby agreed to and understood that the Lessee **DOES NOT** have a pet upon taking occupancy.
If the Lessee does have a pet, Lessee agrees to pay Lessor a **nonrefundable** pet fee of **Three hundred fifty dollars ($350.00).**
B. In the event the Lessee does not have a pet upon moving in, but desires to acquire one, the following provisions will apply:
1. Lessee must obtain written authorization from the Lessor.
2. The Lessee must comply with the provisions of paragraph 8A above.
3. A nonrefundable pet fee of **$350.00 per pet** is paid
C. If a pet is found that is not registered and a fee has not been paid, then the Lessee understands that the pet fee will

be **one and one-half times** the current fee of **$350.00**, plus any accrued damages. The total will be due immediately

_M. J_
(Initials)

1

Maurice Jackson (19-345) 000001

## Edgewood Villas Apartments
## Rental Agreement

**1. PARTIES**

This rental agreement made **13th** day of **December 2018** between **EDGEWOOD VILLAS** (hereinafter referred to as Lessor) **Maurice T. Jacosn, (** hereinafter referred to as Lessee(s)).

WITNESSETH:

**2. PREMISES**

That in consideration of the representations made in the application filed by the Lessee and the conditions and covenants herein set forth, the Lessor hereby leases to the Lessee the following described property:
Apartment No. **#042** at **1601 NESHOTA DR., MOBILE, AL  36605**
for use by Lessee as a private residence only.

**3. TERM**

This rental agreement is for a term of  **12 months**, commencing on **the 13th** of **December** and ending on the last calendar day of **November 30, 2019.** Rent shall include water.  **Gas and Electric service to be paid by the tenant. Stove and refrigerator provided Edgewood Villas.**

**4. RENT**

Lessee agrees to pay to Lessor a rental sum of **Six Thousand Four Hundred & Eighty ($6480,00) dollars** payable in monthly installments of **Five Hundred and Forty ($540.00) Dollars,** each to be due and payable, respectively on the first day of **January 2019** and on the first day of each month thereafter.  All rental payments are to pay at the Resident Manager's Office or at such place as Lessor may designate.  Such rental payment is to make by check, money order or bank cashier's check.  Cash is not acceptable for any payments due.  The Lessor will not accept payment from any other source other than the Lessee.

**5. PRORATED RENT**

It is understood and agreed that Lessee is taking possession of the premises on the **13th** of **December** is to pay the sum of **($0.00) Dollars** rent, from that day through the last day of **November 2018.**

**6. LATE CHARGES AND RETURNED CHECKS**

The Lessee agrees to pay a late charge of  **Forty-five dollars ($45.00)** if a monthly installment is received after the fifth (5th) day of each month. Regardless of the day of the week on which the fifth (5th) may occur and regardless of whether the fifth (5th) is a holiday or other non-business day, rent will be considered delinquent if received after the fifth (5th) day of the month. A night drop has been provided at the office of the Lessor for the convenience of the Lessee for holiday and after-hours delivery of the rent and rents deposited after the fifth (5th) day of the month will be considered late. **No personal checks are accepted.**

**7. DEPOSITS**

At the time of execution of this rental agreement Lessee has deposited with Lessor, the receipt of which is hereby acknowledged, the sum of **$0.00** security deposit, which is to be held by Lessor as a guarantee for the full and faithful performance of all the terms and conditions of the rental agreement by Lessee. Lessor will deposit these funds in an account, which is a separate and noninterest bearing account. This deposit is not rent and shall never be applied by the Lessee as payment in whole or in part of any rental payments due under the rental agreement. In the event of any violation of the terms of the rental agreement made by the Lessee, this security deposit, or a portion thereof, may be retained and offset against any damages due Lessor.

**SECURITY DEPOSIT RETURN**

The Lessor shall not be obligated to release the security deposit unless the following conditions are met:
1. Full term of the rental agreement has expired.
2. Thirty (30) days written notice is given by the Lessee to the Lessor.
3. There is no damage to the premises.
4. The premises are clean.
5. There are no unpaid charges or rent.
6. All keys have been returned.
7. A forwarding address has been left with management.

**SECURITY DEPOSIT DEDUCTIONS**

At the expiration of the term of this rental agreement and surrender of the leased premises, the balance, if any, of said security deposit will be returned to Lessee in accordance with the provisions of Alabama law after deducting there from:
1.   Apartment cleaning charges.
2.   The cost of repairing any damage to the premises, furnishings or equipment or the cost of the replacement of furnishings or equipment removed from the premises or damaged beyond repair.

If the above deductions exceed the amount of the security deposit, the excess shall promptly become due and payable by the Lessee.

**8. PET PROVISIONS**

A.    It is hereby agreed to and understood that the Lessee **DOES NOT have** a pet upon taking occupancy.
If the Lessee does have a pet, Lessee agrees to pay Lessor a **nonrefundable** pet fee of **Three hundred fifty dollars ($350.00).**
B. In the event the Lessee does not have a pet upon moving in, but desires to acquire one, the following provisions will apply:
1.    Lessee must obtain written authorization from the Lessor.
2.    The Lessee must comply with the provisions of paragraph 8A above.
3.    A nonrefundable pet fee of **$350.00 per pet** is paid
C.    If a pet is found that is not registered and a fee has not been paid, then the Lessee understands that the pet fee will
be **one and one-half times** the current fee of **$350.00**, plus any accrued damages. The total will be due immediately

*M. Z*
_____
(Initials)

1

# Edgewood Villas Apartments
## Rental Agreement

upon demand. Failure to meet this demand shall result in default of the rental agreement; at which time the remedies in the rental agreement will apply.

The Lessee agrees that **pet will always be kept inside apartment** except **when on a leash and accompanied by the Lessee** and **will not be tied** to any object outside the apartment. Pet will be walked only in those areas designated by Lessor and **Lessee will pick up and properly place in dumpster all pet feces**.

The Lessee represents that pet is a domesticated dog, cat, or bird, and is not vicious, and has not bitten, attacked, harmed, or menaced anyone in the past. The Lessee agrees that if pet becomes annoying, bothersome, or in any way a nuisance to other Residents or to the apartment operation, the Lessee will immediately upon notice from the Lessor remove pet from the premises or vacate the apartment. Lessee agrees he shall be strictly liable for the entire amount of any wrongful death, or injury to the person or property of others, caused by his pet and shall indemnify Lessor for all costs resulting from same, including but not limited to litigation costs.

Lessee shall not permit any animals, including pets (except for service animals of guests or invitees with disabilities), to enter or remain in the leased premises or the common grounds of the community without 48 hours prior written consent of the Lessor. The presence of an animal without consent shall constitute willful noncompliance and material breach of this agreement. Landlord may remove the unauthorized animal from the leased premises after two days written notice to Lessee. Lessee shall comply with all rules and regulations issued by the Lessor relating to the size, type, care and behavior of pets.

D.    At the expiration of this rental agreement and surrender of the leased premises, the balance of the refundable pet deposit will be returned to the Lessee after deductions for cleaning and/or repair of damage to the premise.

**9. CANCELLA-TION OPTION/ MILITARY PERSONNNEL**

Should Lessee desire to terminate the terms of this rental agreement prior to the expiration thereof, for any reason other than default of the Lessee, Lessor shall have the right, at Lessor's sole discretion and option, to permit such early termination of this rental agreement, provided that the following conditions are met: (1) Lessee provides a sixty (60)-day written notice requesting termination of the rental agreement: (2) Lessee pays a cancellation fee of two months' rent; (3) All rents due through the date of termination are paid; (4) the premises will be left in good, clean condition, with no damages; (5) the security deposit is forfeited; (6) The charges against security deposit set forth in paragraph 7 are paid.

You may terminate the Rental Agreement if you enlist or are drafted or commissioned and on active duty in the U.S. Armed Forces. You also may terminate the Rental Agreement if:

(1)   You are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; and
(2)   You (i) receive orders for permanent change-of-station, (ii) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, or (iii) are relieved or released from active duty.

After you deliver to us your written termination notice, the Rental Agreement will be terminated under this military clause 30 days after the date on which your next rental payment is due. You must furnish us a copy of your military orders, such as permanent change-of-station orders, call-up orders, or deployment orders or written notification from you commanding officer. Military permission for base housing does not constitute change-of-station order. After you move out, Lessor will return your security deposit, less lawful deductions. For the purposes of the Rental Agreement, orders described in (2) above will only release the Lessee who qualifies under (1) and (2) above and receives the orders during the Rental Agreement term and such Lessee's spouse or legal dependents living in the Lessee's household. A co-resident who is not your spouse or dependent cannot terminate under this military clause. Unless you state otherwise in paragraph 10, you represent when signing the Rental Agreement that: (1) you do not already have deployment or change-of-station orders; (2) you will not be retiring from the military during the Rental Agreement term; and (3) the term of your enlistment or obligation will not end before the Rental Agreement term ends. Even if you are entitled to terminate the Rental Agreement under this paragraph, liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the Rental Agreement term when and if you move out, less rents from others received in mitigation. You must immediately notify us if you are called to active duty or receive deployment or permanent change-of-station orders.

**10. TENANT REPRESENTATIONS**

By signing this rental agreement, Lessee represents that neither Lessee nor any occupant of the leased premises has been convicted of any felony or misdemeanor involving violent crimes, sexual misconduct or a drug related crime, and that to the best of Lessee's knowledge, neither the Lessee nor any occupant of the leased premises is subject to a criminal investigation or arrest. Lessee hereby authorizes Lessor to perform a criminal background investigation of Lessee or any occupant of the leased premises.

Lessee represents and warrants that all information provided to Lessor, including the information provided in the application for the rental of the leased premises (the "Application"), is true, complete and correct. If any information Lessee provides to Lessor is determined to be false, Lessee will be in breach of this rental agreement. Lessee understands and agrees that the Application is hereby made a part of the rental agreement, and a breach of any representation or warranty in the Application shall be a material breach of this rental agreement.

*m. %*
(Initials)

Tenant represents that the documents of identity given to Lessor legally establish the identity and nationality of the Lessee and those authorized to occupy the leased premises, and, in addition, the documents submitted to the Lessor by the Lessee and any occupant of the leased premises establish the legal right of the Lessee and occupants to be in the United States of America. The Lessee and any occupant of the leased premises certify that the Lessee/occupant(s) (i) are not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by any Executive Order or

Maurice Jackson (19-345) 000003

# Edgewood Villas Apartments
## Rental Agreement

any agency of the United States as a terrorist; (ii) that they are not Specially Designated National and Blocked Person(s), or other banned or blocked person, entity, nation, or transaction pursuant to any law, order, rule, or regulation that is enforced or administered by the United States of America; and (iii) are not engaged in this transaction directly or indirectly on behalf of, or instigating or facilitating this transaction, directly or indirectly on behalf of, any such person, group, entity, or nation.

**11. OCCUPANTS**   The Lessee agrees that the premises are to be occupied only by those persons specifically named herein:

**Maurice T. Jackson**

If any other person resides with the Lessee without prior written authorization from the Lessor, the Lessor has the right to declare the rental agreement in default. The Lessee further agrees that the above-demised premises cannot be assigned or sublet by said Lessee either in whole or in part.

Lessee shall not allow or permit a registered sex offender to enter the leased premises as an occupant, guest or invitee nor allow any such person in or upon the common areas of the property.

**12. OCCUPANCY**   Should the Lessee be unable to obtain possession on the date of the rental agreement term because of delays of the Lessor, or by reasons of the holding over of any previous occupants of said premises, or if a building is to be constructed and workmen or contractors have not brought the building to a condition permitting occupancy, or should there be any other delay in granting possession, the Lessor shall not be liable in damages to the Lessee.

**13. STRUCTURAL DAMAGE**   If the leased premises are destroyed by fire, and such fire is due to the Lessee's fault or negligence, then, and in that event, the monthly installments shall not abate.

If the leased premises, or the building in which the leased premises are located, shall be damaged by fire or other unforeseen event, without fault of the Lessee, then, and in that event, the Lessor shall have the option to decide whether the Lessor shall or shall not repair and restore said building or leased premises to their original condition; and if the Lessor decides to repair and restore the building or the rented premises as aforesaid, then, from the time such damage occurs until the repairs are completed, an equitable abatement of the monthly installments will be allowed. If the Lessor decides not to repair and restore the leased premises, then in that event this lease shall terminate. It is agreed, however, that if the damage is such as not to render the leased premises untenable for the purpose for which they are rented, then there shall be no abatement of the rent while the repairs are being made.

Except for the normal hanging of pictures and wall decorations that do not deface wood, masonry or sheet rock surfaces, the Lessee shall not drive any nails or tacks or set any screws into any part of the apartment or building, or make any structural change, whatsoever without first obtaining the written consent of Lessor. There will be no additional telephone, cable, or other outlets or wiring in the leased premises except when Lessee has obtained written permission from Lessor. Permission will require the use of a Lessor approved professional technician to handle installation and Lessee will be responsible for all costs, including damages associated with unauthorized installation. Any interior change of paint colors, wallpapers, and wallpaper borders are prohibited without written authorization of Lessor. All costs associated with returning premises to Lessor's standards will be borne by Lessee if Lessor's written authorization is not obtained.

**14. MOLD**   It is the responsibility of the Lessee to immediately report to management in writing any leak, moisture or mold problem of any kind. The presence of moisture can result in a mold problem that if left unattended can result in damage to the premises. If such damage is as a result of moisture or leaking not being reported to management, Lessee will be responsible for any and all costs incurred by the Lessor in the correction of the mold problem. Any sign of mold, even if no moisture or leak is evident, should be reported to management. Lessee acknowledges that Lessee has waived or released elsewhere in this lease any right to pursue a claim against Lessor for any consequences claimed to be the result of exposure to mold. Lessee agrees not to block or cover any of the heating, ventilation or air-conditioning ducts in the apartment.

**15. INSURANCE**   <u>Lessor recommends that Lessee secure renter's insurance and other appropriate insurance to adequately cover any loss, damage, or liability incurred by Lessee or other occupants or visitors while leasing. Lessor shall not be responsible for any damage to Lessee's or others' personal property.</u>

<u>Lessor acknowledges that Lessor has been made aware that the apartment and the apartment community upon which it is situated may be located within or adjacent to a flood plain. Lessor recommends that Lessee secure adequate flood insurance to protect Lessee against damage to the Lessee's property.</u>

*M.J.*
_____
(Initials)

**16. DEFAULT**   Lessee will be in default if: (1) Lessee fails to pay rent or other amounts that Lessee owes; (2) Lessee or any guest or occupant violates this rental agreement, Community Policies and Procedures, or fire, safety, health, nuisance, or criminal laws, regardless of whether arrest occurs; (3) Lessee abandons the Apartment; (4) Lessee fails to obtain or maintain electric service to the leased premises; (5) Lessee gives incorrect or false information in the Application or in this rental agreement; (6) Lessee or any occupant is arrested for a felony or misdemeanor offense

Maurice Jackson (19-345) 000004

## Edgewood Villas Apartments
## Rental Agreement

involving (a) actual or potential physical harm to a person, (b) possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia as defined in the Controlled Substances Act or (c) sexual misconduct; (7) any illegal drugs or paraphernalia are found in Lessee's Apartment; or (8) Lessee or any occupant, in bad faith, makes an invalid habitability complaint to an official or employee of a utility company or the government. Any violation of this paragraph shall be considered a material breach of this agreement for which the remedies in the rental agreement will apply.

**17. ACCELERATION**   Should the Lessee violate any conditions of the rental agreement, then in that event the rent for the entire term of the rental agreement shall at once become due and payable, at the option of the Lessor, and the Lessor may proceed, by attachment, suit, or otherwise, to collect the rent in the same manner as if by the terms of this rental agreement the rent for the entire term is payable in advance.

**18. NOTICE**   Notices, including those provided by statute, shall be in writing and served by hand delivery, United States First-Class or certified mail postage prepaid, or overnight delivery. If service is by mail, notice shall be deemed effective 3 days after mailing.  Notices served the Lessee are effective if left with some person residing in or in possession of the leased premises above the age of 16 years, or at the time of posting same on the door of the leased premises.

**19. AUTOMATIC RENEWAL**   If either the Lessee or the Lessor desires that this rental agreement terminate at the expiration of its term, including month-to-month tenancy, one must give to the other written notice to be received not less than Sixty (60) days prior to the expiration of the rental agreement term. If the written notice is given less than Sixty (60) days prior to the expiration date, the Lessee's obligation to pay rent shall extend to and through the following month. The Lessor reserves the right to show the premises to intended Lessees and to display "for rent" signs on said building or premises.

Failure of either party to give proper termination notice will automatically renew this rental agreement for an additional term on a **month-to-month basis, at the month-to-month fee of Fifty ($50.00) and no/100 dollars in addition to the current market rental rate at the time of the expiration of the lease for the leased premises.**

**20. CHANGES IN RENTAL AGREEMENT PROVISIONS**   The Lessee further agrees that, unless otherwise provided herein, upon the termination of the initial term of the rental agreement, the Lessor can make changes in the rental agreement provisions after the initial term and during the period in which rental agreement is on a month-to-month basis by notifying the Lessee of such changes by sending a copy of said changes to the Lessee. Such changes will be binding upon the Lessee as long as the Lessee remains a tenant of the Lessor.

**21. ABANDON- MENT, FORFEITURE AND TERMINATION**   In the event the Lessee vacates or abandons the leased premises before the expiration of the term, whether voluntarily or involuntarily, or violates any of the terms, conditions, or covenants hereof, the Lessor shall have the privilege, at the Lessor's option, of terminating the possessory interest in accordance with state law, and re-entering and taking possession of leased premises and let same as agent of Lessee and apply the proceeds received from such letting towards the payment of the rent and/or other charges due by lessee and such re-entry and re-letting shall not discharge Lessee from liability for rent or from any other obligation of Lessee under the terms hereof, or Lessor may at his option re-enter the leased premises and upon giving written notice in accordance with state law to the lessee at annul and terminate this rental agreement. Such re-entry shall not bar the right of recovery of rent or damages for breach of covenants nor shall the receipt of rent after conditions broken be deemed a waiver of forfeiture, except as expressly provided by law.

The tenant shall notify the landlord of any anticipated absence from the premises in excess of 14 days no later than the fifth day of the extended absence. Tenant's failure to give Landlord a notice of absence from the premises is a willful violation of this lease pursuant to which the landlord may dispose of the tenant's property in accordance with state law.

The tenant's failure to surrender possession of the leased premises after this rental agreement has been terminated shall be deemed willful noncompliance by the tenant for which the Landlord will be entitled to invoke the remedies as provided by state law.

If Tenant (Lessee) shall remain or continue to be in possession of the leased premises or any part thereof after the termination of the rental agreement, said holdover shall be considered willful noncompliance and not in good faith, and the Landlord (Lessor) may be entitled to recover an amount equal to three (3) months periodic rent, or actual damages, whichever is greater, and any other sum recoverable pursuant to Alabama law.

_M.J_____
(Initials)

**22. WARRANTY AND INDEMNITY**   It is further understood and agreed that the Lessor shall not be liable for any injury to person or damage to property which may occur on account of any defect in said leased premises or the premises, including damages caused by rain, wind, broken pipes, failure of air conditioning or the heating, presence of mold spores of any kind or other causes. Any

Maurice Jackson (19-345) 000005

## Edgewood Villas Apartments
## Rental Agreement

and all property of said Lessee, which may be located or stored either in the demised premises or the apartment complex of which the demised premises form a part, shall be at the sole risk of the Lessee. The Lessee waives any right of subrogation against the Lessor under any insurance policy and shall cause the Lessee's insurance carriers to waive the same. Lessee further understands and acknowledges that the importance of securing personal property insurance (renter's insurance) has been explained to the Lessee, and it is understood that, in the event of a loss, the property's insurance policy does not include coverage of any personal items, pursuant to paragraph 15, Lessee acknowledges that Lessee has been advised to secure renter's insurance. The Lessee hereby acknowledges the good condition of the leased premises, and his acceptance of this rental agreement is conclusive evidence that said premises are in good and satisfactory order and repair unless otherwise specified herein, and he agrees that no misrepresentation as to the condition of the premises has been made and no promise to decorate, alter, repair, or improve the premises unless otherwise specified in writing.

**23. LIABILITY**

It is understood that no employee of the Lessor is furnished to provide any personal services to the Lessee, his family, his employees, or his guests, and the Lessee agrees to relieve the Lessor and hold the Lessor harmless from any and all liability in connection with such service.

**24. TAXES, INSURANCE, AND UTILITIES**

Lessee shall pay the public utility bills for said leased premises when and as the same, severally become due and make all required deposits with public utility companies unless specifically included in the rent. Lessee acknowledges that if Lessor is currently paying for water and sewer service to the leased premises, without expense to the Lessee, the Lessor shall have the right at any time during the term of this rental agreement to install a water meter to measure service to the leased premises. If any such meter is installed, upon thirty (30) days' written notice, Lessee shall thereafter be liable for paying for water and sewer charges for the leased premises in the same manner as prescribed above for any other public utilities, without reduction or abatement of rent. Lessee acknowledges that Lessee will be responsible for the meter deposit and application fee.

The monthly rental figure contained herein above is based, in part, upon ad valorem tax rates, insurance rates, rental taxes, and public utility service rates existing at the time of the execution of this rental agreement and being paid by the Lessor. In the event of any increase or increases in the existing rates during the term of this rental agreement, the Lessor may asses the Lessee with a pro rata share of such increase. The Lessee's pro rata share shall be that portion of such increase equal to the product obtained by multiplying said excess by a fraction, the numerator of which shall be one and the denominator of which shall be the total number of units in the development. The Lessee agrees to pay his pro rata share of such increase in monthly installments as additional rent hereunder, commencing with the month following the date the Lessor must pay said increase. The Lessee agrees that if any taxing authority enacts a tax that is computed on the rent, then this tax shall be passed on to the Lessee as additional rent, and the monthly rent shall be increased by the amount enacted by the taxing authority.

The Lessee agrees to pay, in addition to the rents reserved herein, lodging taxes if assessed to the Lessor by the State of Alabama on the proceeds of this lease.

**25. RULES AND REGULATIONS**

The Lessee agrees to comply with and to cause Lessee's guests and family members to comply with the rules and regulations that may exist from time to time; and the Lessee agrees that the rules and regulations may be amended from time to time by the Lessor, and notice of such amendments of rules and regulations shall be sufficiently given by posting a copy thereof on the door of the leased premises. It is agreed that the violation of any such rules and regulations by the Lessee or any of the Lessee's guests or family members shall constitute a default in the terms of this rental agreement. The Lessee hereby agrees to be bound by the following:

1. **Notices:** All complaints and requests shall be made to the Property Manager. The Lessee shall also give immediate notice to Property Manager of any accident, property damage, or injury.

2. **Rental Payments and Late Fees:** RENT IS DUE ON OR BEFORE THE FIRST DAY OF THE MONTH. There is a grace period that extends through the fifth day of each month. Starting on the sixth day, if the rent is not paid in FULL, there is a late charge of $45.00. If the account is not paid in full seven days after the fifth day of the month, the account will be turned over for eviction. Rental payments may be taken in the form of a cashier's check, or money order.

3. **Right of Entry:** The Lessor, and any authorized representatives of Lessor may enter the unit with reasonable frequency during usual business hours with 24 hours' notice, or at any other time in case of emergency. Unit inspections may be completed to ensure clean/sanitary conditions and that no property damage has occurred, to include appliances, light fixtures and doors.

4. **Service Requests:** Service requests should be made directly to the leasing office. After business hours, an emergency maintenance requests may be made by calling the leasing office at 251-478-4341. Requests are responded to as quickly as possible, on a first call basis except in case of emergency. Air conditioning is not considered an emergency unless there is written verification by a doctor.

5. **Keys and Locks:** Keys will be issued after the lease is signed by all parties and all money due has been collected. You will be issued two (2) sets of keys for your apartment, and all sets of keys must be returned at move-out. Charges for lock changes are $120.00 and payable at the time of lock change. LOCKOUTS: If Lessee is locked out of unit after hours, you may call office. If possible, management will let you into the apartment with valid identification showing your physical address on the property. The lock out charge is $50.00 payable at the time of lockout.

Maurice Jackson (19-345) 000006

## Edgewood Villas Apartments
## Rental Agreement

6. **Disturbances and Noises:**  Everyone should be able to enjoy the peace and quiet offered at our community. Lessee must refrain from making or permitting any loud or disturbing noises during the hours of 8:00 p.m. to 8:00 a.m. Loud music, parties, etc., are not to be on patios, porches, or courtyards. Disturbance complaints should be reported to the leasing office. After hours complaints should be given to the local police department.

7. **Porches/ Decks/Sidewalks/Courtyard/Lawn:** Front porches, sidewalks, front and side lawn and parking lots are not to be used as sitting, play areas or storage of any kind. No loitering is permitted on front porch, front or side lawn areas, sidewalks, or parking lot. No items are to be placed on front porch to include chairs, grills, bicycles, etc. Any items found in these shared areas will be removed immediately and a trash charge of $35 may be added to your account.

8. Back patios, back porches decks, and courtyards must be kept free of trash and debris. Hanging rugs, indoor furniture, laundry, etc. are not permitted. Furniture permitted on the patio, back porch, and deck mush be made for outdoor use only. Bicycles may be kept on patios, back porches and decks neatly. No items may be stored or kept on lawn to include chairs, outdoor grills. Any items that are not removed if requested will be removed and a fee will be charged.

9. **Outdoor Grills:** Outdoor grills cannot be used inside an apartment, front porch, back patio or back porch. Grills being used must be a minimum of 10 feet away from any building. Charcoal grill may be used on decks if it is used a minimum of 10 feet away from building. Charcoal fires must be extinguished completely. The coals must be put in a container and deposited in a dumpster. Used coals cannot be brought inside or placed on patios or balconies. Storing items in these areas is a direct violation of state and local fire codes. Grills may only be stored after cooled, on patio, back porch or deck. Any grill left in unauthorized areas will be immediately removed and a fee may be charged.

10. **Trash Removal:** Please make sure all trash is bagged and placed in the dumpster. Lessee must contact the office if bulky items such as furniture or televisions need disposal. ANY VEHICLE BLOCKING A DUMPSTER WILL BE TOWED AT OWNER'S EXPENSE WITHOUT NOTICE). Trash is NOT to be left on porches, patios, decks, parking lot, lawn or courtyards. Resident will be charged a $35.00 violation fee for not disposing of trash per the agreement.

11. **Household Members and Guest:** All persons under the age of 16 must ALWAYS be supervised by a responsible adult. The Lessee shall be responsible for the conduct of household members and guests, including any damage done to the premises. Household members and guests shall not create disturbances of any nature. Quiet time is 8:00pm until 8:00am. Lessee must notify Property Manager in writing regarding guest residing beyond ten (10) days. If any other person resides with the Lessee without prior written authorization from the Lessor, the Lessor has the right to declare the rental agreement in default.

12. **Noises:** No Lessee shall make or permit to be made by household members or guests, any disturbing noises or interfere in any way with rights of other residents or the operation of the property by the Lessor or his agents.

13. **Crime Free Housing:** Lessee, any member of the household, or guest or other person under the Lessee's control shall not engage in or facilitate criminal activity on or near the property including, but not limited to, violent criminal activity or drug related criminal activity. See Crime Free Housing Addendum.

14. **Aerials and Satellite Dishes:** The Lessee agrees to first obtain written consent from the Lessor as to the size and location of the equipment. Lessee must also provide to Property Manager proper liability insurance (#300,00) minimum) with a certificate of insurance naming Edgewood Villas as certificate holder to cover personal and physical damage that might be caused by satellite dish and all related components. The Lessee agrees that no radio wires or television aerials or their appurtenances shall be places on any building. No anchors or holes can be bored through or violate an exterior wall, door, window or drilled into or through any exterior location or surface. The satellite dish or components cannot be affixed to or violate any door, roof, siding, fascia, soffit, porch, patio, deck, lawn or any exterior surface. No satellite dish or component can be in or violate any common area or surface. Installation must not be in any location that may risk striking electrical or water lines or impair the buildings weatherproofing. Satellite dishes must be professionally installed.

15. **Window Coverings:** Mini-blinds are provided to create a uniform exterior appearance. Lessee is responsible for the care of these blinds. Blinds may not be removed. If Lessee elects to furnish draperies, Lessee must first notify Lessor, and in all events, such coverings must have white backing. No other window treatment will be permitted. Foil and other similar material shall not be placed in the windows or glass doors. In the event of a hurricane threat, the tape placed on windows shall be removed within a reasonable amount of time after the danger ceases.

16. **Interior and Exterior Alterations:** Alterations such as painting, wallpaper (strippable only), paneling, mirrored walls, change of light fixtures, etc., MUST HAVE PRIOR WRITTEN APPROVAL FROM THE MANAGER. Generally, the apartment must be restored to its original condition upon move-out. Alterations that the management and future residents deem acceptable may be left in the apartment and become property of the community. These MUST be approved before you move-out.

17. **Waterbeds:** Waterbeds are allowed by written permission from the Property Manager and insurance.

18. **Housekeeping Standards:** Lessee must follow pest control procedures, treatments and maintain housekeeping standards to ensure that safe and sanitary conditions are maintained. See Pest Control and Housekeeping Addendum.

19. **Solicitors and Salespersons:** Solicitors and salespersons are strictly prohibited unless the manager grants permission. The person must have a letter of authorization, on apartment letterhead, signed by the manager. If the person does not show a copy of the letter, call the rental office immediately.

Maurice Jackson (19-345) 000007

## Edgewood Villas Apartments
## Rental Agreement

20. **Parking:** Lessee must register vehicles with the office to receive a parking decal to park on the property. Only residents with valid driver's license on the lease with current vehicle registration may receive a decal. There are two (2) assigned parking spaces for each unit. These spaces may only be used by vehicles with a valid decal. The unit parking spaces may not be used for visitors or additional vehicles beyond the two (2) decal limit. Any vehicles without a decal must be in a visitor parking space. All vehicles must be parked in a space with bumpers facing inward and not over the sidewalk. Backing vehicles in spaces will not be tolerated and subject to immediate towing. If a vehicle is found in an assigned parking space without the appropriate decal, it will be subject to immediate towing. RECREATIONAL VEHICLES, LARGE TRUCKS, BOATS, OR BOAT TRAILERS ARE NOT PERMITTED ON THE PROPERTY). Parking must be parallel with painted lines. Do not park in handicapped parking space without legal decal. Motorcycles may be used only for entry and exit to the community and are to be parked only at the curb. They must be operated quietly. Kickstands with appropriate base must be used to avoid damage to blacktop. DECALS MUST BE RETURNED AT MOVE OUT OR A FEE OF $125 WILL BE CHARGED TO ACCOUNT.

21. **Non-Operational Vehicles:** Any vehicle that is inoperable to include flat tire, expired and/or stolen plates can be towed immediately at owner's expense. There is no 3-day warning.

22. **Car Washing and Repair:** Car washing and repair, including oil changes are strictly prohibited inside the community. Vehicles are subject to immediate towing if repairs are being made on property. Residents will be charged for any and all damages to, or clean-up of property including sidewalk, parking lot or grounds.

23. **Moving:** Moving of furniture and other bulky articles other than within the Lessee's own apartment shall be conducted on the premises only after the consent of the Lessor is first obtained. Any damage to the building or any property of the Lessor or to the person or property of anyone else by the moving of articles in and out of the premises by the Lessee shall be paid for by the Lessee causing such damage.

24. **Pets:** No pets without written permission of management. Pets not exceeding 30 pounds at full growth are permitted Residents must pay additional deposits, fees and sign a pet addendum to the lease. See Pet Addendum.

25. **Pool:** If your community has a pool, residents and guests must abide by all pool rules and regulations and the rules posted at the pool. See Pool Rules Addendum.

26. **Lights:** Street exterior lights are inspected periodically. Please call the office to report that a light is out. Light bulbs are only supplied at move-in. Lessee is responsible for replacing bulbs at move-out.

27. **Flammables and Explosives:** Storage of flammable or explosive items are prohibited inside the premises.

28. **Appearance:** The hanging of rugs, laundry, towels, mops, or articles of clothing over the front porch railings, windowsills or on the back patio/porches is forbidden. Outside garbage containers other than those provided by the Lessor are forbidden on the demised premises. Bagged trash or recyclables may not be left outside around the leased premises.

29. **Fire Extinguisher:** The fire extinguisher is to be used only in the event of a fire in the apartment, building, or on the grounds of the property. If the fire extinguisher is used at any time, it should be reported to the Lessor immediately and brought to the office for recharge to assure continue protection. If an extinguisher is located within the leased premises, the Lessee should periodically check the gauge of the fire extinguisher to assure it remains charged and ready for use.

30. **Smoke and Carbon Monoxide Detector:** See Smoke and Carbon Monoxide Detector Addendum.

31. **Bicycles:** Bicycles and skateboards are prohibited on sidewalks, courtyards and pool area. Bicycles, etc. must be stored indoors or on the back patio.

32. **Vinyl and Wood Siding:** Where vinyl or wood siding is present on the exterior of the building, certain precautions are required. Grills must be kept at least ten feet away from the siding when in use. Hooks, screws and decorator items cannot be installed or attached to vinyl or wood siding. Charges for repair will be assessed to the Lessee if property is damaged.

33. **Alterations:** No alterations, painting or redecorating of a permanent nature may be done to the apartment, porch or patio.

34. **Common Areas:** The Lessee shall not obstruct sidewalks, courtyards and other grounds. No basketball goals are permitted on the property.

35. **House Plants:** Watertight containers or plastic plant trays must be used under all plants and Lessee will be responsible for damage to carpet.

36. **Water Damage:** The Lessee will be strictly held responsible for any damage or loss to this and other dwellings resulting from overflow from toilets, sinks bathtubs, or basins in the apartment due to Lessee neglect.

37. **No swimming pools or water hoses** of ANY kind allowed in/on property.

38. **No Loitering at any time.** Lessee may use unit back patio for exterior leisure if it does not interfere with the rights of other residents.

39. **No open containers of alcoholic beverages** permitted on the outside of apartment.

Maurice Jackson (19-345) 000008

## Edgewood Villas Apartments
## Rental Agreement

40. **Speed Limit:** Observe the 15-mph speed limit.

41. **Lease Clause Violations:** Resident understands that violations of any of the clauses contained in the lease or any covenants may result in immediate eviction proceedings.

42. **Property Manager/ Resident Agent:** The property manager responsible for your rental unit and registered agent of the owner for service of legal process.

_m. Z_
(Initials)

**26. SWIMMING POOLS AND OTHER AMENITIES**

The Lessee hereby releases and holds the Lessor blameless for any damage or injury to persons or property caused as a result of the use of the swimming pool, playground, or other common area amenities by the Lessee or any persons making used of said pool, playground or amenities through the use, permission, or consent of the Lessee. Children who are not toilet-trained and anyone who is incontinent must wear waterproof pants while in the pool.

No persons under the age of sixteen (16) years will be allowed in or about the swimming pool area unless accompanied by an adult, (resident) and no child in diapers will be allowed use of the pool. Pool use hours will be posted at the pool area. Swim at your own risk. There are no lifeguards on duty. Lessor shall not be responsible for any health-related reactions or other allergy related complications to Lessee or guests arising from pool treatment chemicals, additives or solutions.

All common areas, such as the swimming pool, lodge, weight room, tennis courts, or any other amenity, are private property for the use of Lessees only. The hours of operation of the swimming pool are posted at the site. Guests of Lessees must be limited to two (2) persons per apartment at any one time and must be accompanied by a Lessee unless written permission to the contrary is given by management. The current published regulations must be observed as to use of the pool by residents and guests. No pets are allowed in the pool area. All Lessees and their guests must wear proper bathing suit attire when swimming. The Lessee further agrees that only a greaseless-style suntan lotion may be used and not an oil-based suntan lotion, and further agrees that no ball playing, running, wrestling, or loud activity will be allowed in the pool or pool area.

Beverages brought to the pool area shall be in containers other than glass. No glasses, bottles, glass containers, or food are allowed in the pool area. No articles or foreign matters shall be thrown into the pool or surrounding area. Other rules are to be observed as posted throughout the property from time to time by the Lessor. If you swim alone, you do so at your own risk.

**27. VEHICLES**

Motorcycles, including motorbikes and minibikes, shall not be parked in the breezeways, hallways, patios, grass, or lawn area and must be parked in areas specifically provided by the Lessor. Riding of same on sidewalks or lawns is prohibited. Lessee shall not park or permit Lessee's guests or invitees to park boats, mobile homes, recreational vehicles, commercial vans, trucks, or other equipment in parking areas designated for automobiles or on the grass or in any other area on the premises without the written permission of the Lessor. Such vehicles will be towed at Lessee's expense. Parking is not assigned or reserved except where there is a garage or covered parking area. Parking areas are limited, and no Lessee shall park more than 2 vehicles on the premises at any time. The parking of additional vehicles requires written permission of the Lessor. Failure to obtain written permission shall be a violation of the conditions of this lease.

All vehicles parked by the Lessee or guests or invitees shall be operable and shall bear a current license plate. Commercial vehicles are not allowed in common area parking. Vehicles shall be parked only in valid assigned paved areas provided for parking. This lease is the only warning notice regarding inoperable vehicles. The Lessor will not give future notice to remove inoperable vehicle or vehicle with an expired license plate. Lessor has the right to remove it at the Lessee's expense. Inoperable condition includes flat tires, expired tags and dead batteries. Unsightly motor vehicles will be towed at Owner's expense and without warning.

Lessee shall not work on or repair an automobile or motorcycle or any other type of vehicle anywhere on the premises. Likewise, the washing of automobiles or motorcycles on the premises is not permitted.

**28. NUISANCES**

The Lessee agrees to comply with all laws and ordinances relating to fire, health, safety, sanitation and nuisances insofar as the leased premises and the streets, alleys, and premises of the Lessor around the same are concerned, and the Lessee will by no act or omission render the Lessor liable for any violation of such City law or ordinance. Should the Lessee or his family or guest fail to maintain a standard of behavior consistent with the consideration necessary to provide reasonable peace and quiet to other tenants, such as by being boisterous or disorderly, creating undue noise, disturbance, (Quiet hours are 9:00pm – 8:00am), or nuisance of any nature or kind, then, at the option of the Lessor, the rent for the whole expired term of the lease shall at once become due and payable, and the Lessor shall have the further option to cancel this lease and recover possession of the premises. Any violation of this paragraph shall be deemed a willful breach of this agreement and willful noncompliance of Alabama Law.

**29. DRUG-FREE HOUSING**

The Lessee, any member of the Lessee's household, or a guest or any other person on the Lessee's premises shall not

Maurice Jackson (19-345) 000009

## Edgewood Villas Apartments
## Rental Agreement

engage in nor permit the premises to be used for or to facilitate criminal activity on or near the premises, including, but not limited to, violent criminal activity or drug-related criminal activity. "Violent criminal activity" means any felonious criminal activity that has as one of its elements the use, attempted use, or threatened use of physical force against the person or property of another. "Drug-related criminal activity" means the illegal manufacture, sale, distribution, or use, or possession of a controlled substance. Violation of this paragraph will be a willful breach of this agreement and willful noncompliance of Alabama Law.

**30. ARBITRATION**

All disputes between the parties concerning the provisions of this rental agreement shall be submitted to arbitration pursuant to the procedures of the state in which the Apartment Community is located before a panel of three (3) independent third party arbitrators; one such arbitrator to be selected by each of the disputing parties and a third arbitrator to be mutually selected by the two arbitrators so selected. Each party shall designate its arbitrator within forty-five (45) days of service of the demand for arbitration. The arbitrators shall have no authority to award punitive, exemplary, consequential, special, indirect, or incidental damages or attorney's fees. The parties shall share equally the fees and costs of the arbitrators and shall otherwise bear their own costs and expenses of the arbitration. The panel of arbitrators shall be instructed to resolve the dispute within a period of sixty (60) days from the date the panel convenes and shall issue a written decision setting forth the reasons for their determination.

*M.J.*
_____
(Initials)

Notwithstanding the preceding paragraph, Lessor shall not be required to submit to binding arbitration disputes arising from: (1) nonpayment of rent; (2) an action to recover possession of the leased premises; or (3) the termination of the rental agreement by reason of default by Lessee under the rental agreement. Lessor shall have all rights and remedies under law and in equity with respect to any such disputes. Lessee acknowledges and agrees that this paragraph constitutes a waiver of all rights to civil court action for a dispute arising under the terms of this rental agreement, subject to the provisions hereof, and only the arbitrators, not a judge or a jury, will decide the dispute.

**31. SALE OF PROPERTY**

Lessor hereby reserves the right to cancel this rental agreement by giving the Lessee thirty (30) days written notice prior to such cancellation in the event of a sale of the apartment community or a change in the ownership form that exists upon execution of this rental agreement

**32. ENTIRE AGREEMENT**

This rental agreement and the amendments, if any, attached thereto and forming a part thereof set forth all covenants, promises, conditions, and understanding between the Lessor or his agents and Lessee concerning the leased premises, and there are no covenants, promises, agreements, conditions, or understandings, either oral or written, between them other than herein set forth. No modification or limitation or extension of any condition of this rental agreement will be binding unless in writing and signed by the Lessor or his agents and the Lessee. Failure of the Lessor or his agents to act on any default on the part of the Lessee shall not be construed to waive or to lessen the right of the Lessor to insist upon the provisions hereof. It is understood that the terms "Lessor or his agents" and "Lessee" as used in this agreement shall include the plural and shall apply to persons both male and female. All obligations of the Lessee are to be joint and several. This rental agreement, whether recorded, shall be junior and subordinate to any mortgage hereafter placed by the Lessor on the entire property of which the leased premises form a part.

**33. LESSOR'S CONSENT**

Whenever any action or any condition is prohibited or restricted under this rental agreement unless the Lessor's consent is secured, or the Lessor's consent is required under this rental agreement either expressly or by implication, the Lessee agrees that the Lessor's decision to consent or not need not be made in accordance with any particular criteria or commercial standards (including "reasonable commercial standards"), that the Lessor may make the decision on the basis of any factors that seem relevant to the Lessor, and that the Lessor's decision, for whatever reason, shall be conclusive and binding on the Lessee. The Lessor may condition the giving of consent upon whatever requirements and conditions seem desirable to the Lessor, regardless of whether the Lessor's position and/or the requirements and conditions accord with any particular criteria or commercial standards, including reasonable commercial standards.

**34. PARTIAL INVALIDITY**

If any section, clause, sentence, word, or provision of this rental agreement or the application thereof to any party or circumstances shall, to any extent, be or become invalid or illegal, and such provision shall thereby become null and void, the remainder of this rental agreement shall not be affected thereby, and each remaining provision of this rental agreement shall be valid and enforceable to the fullest extent permitted by law.

**35. LESSOR'S DISCLOSURE**

In accordance with Alabama Law, the name and address of the company which manages this property and the name of the individual authorized to act on behalf of the company are as follows:

**Cumberland, Real Estate**
**2110 Blair Blvd**
**Nashville, TN 37212**

**Yolanda Power, PROPERTY MANAGER**

**READ YOUR RENTAL AGREEMENT BEFORE SIGNING**

**EDGEWOOD VILLAS APARTMENTS**

Lessor

By: *Yolanda P.*  12/13/18
«AgentForLessor» (sign and date)
Agent for Lessor

«LeaseHolder1» (sign and date)

«LeaseHolder2» (sign and date)

9

Maurice Jackson (19-345) 000010

Edgewood Villas Apartments
**Rules and Regulations Addendum**

The following rules and regulations are incorporated in the lease agreement you have signed (see section 25- Rules and Regulations). Should you have any questions concerning these rules and regulations or their interpretations, please contact the leasing office.

1. **Notices:** All complaints and requests shall be made to the Property Manager. The Lessee shall also give immediate notice to Property Manager of any accident, property damage, or injury.

2. **Rental Payments and Late Fees:** RENT IS DUE ON OR BEFORE THE FIRST DAY OF THE MONTH. There is a grace period that extends through the fifth day of each month. Starting on the sixth day, if the rent is not paid in FULL, there is a late charge of $45.00. If the account is not paid in full seven days after the fifth day of the month, the account will be turned over for eviction. Rental payments may be taken in the form of a cashier's check, or money order.

3. **Service Requests:** Service requests should be made directly to the leasing office. After business hours, an emergency maintenance requests may be made by calling the leasing office at 251-478-4341. Requests are responded to as quickly as possible, on a first call basis except in case of emergency. Air conditioning is not considered an emergency unless there is written verification by a doctor.

4. Right of Entry: The Lessor, and any authorized representatives of Lessor may enter the unit with reasonable frequency during usual business hours with 24 hours' notice, or at any other time in case of emergency. Unit inspections may be completed to ensure clean/sanitary conditions and that no property damage has occurred, to include appliances, light fixtures and doors.

5. **Keys and Locks:** Keys will be issued after the lease is signed by all parties and all money due has been collected. You will be issued two (2) sets of keys for your apartment, and all sets of keys must be returned at move-out. Charges for lock changes are $120.00 and payable at the time of lock change. LOCKOUTS: If Lessee is locked out of unit after hours, you may call office. If possible, management will let you into the apartment with valid identification showing your physical address on the property. The lock out charge is $50.00 payable at the time of lockout.

6. **Disturbances and Noises:** Everyone should be able to enjoy the peace and quiet offered at our community. Lessee must refrain from making or permitting any loud or disturbing noises during the hours of 8:00 p.m. to 8:00 a.m. Loud music, parties, etc., are not to be on patios, porches, or courtyards. Disturbance complaints should be reported to the leasing office. After hours complaints should be given to the local police department.

7. **Porches/ Decks/Sidewalks/Courtyard/Lawn:** Front porches, sidewalks, front and side lawn and parking lots are not to be used as sitting, play areas or storage of any kind. No loitering is permitted on front porch, front or side lawn areas, sidewalks, or parking lot. No items are to be placed on front porch to include chairs, grills, bicycles, etc. Any items found in these shared areas will be removed immediately and a trash charge of $35 may be added to your account.

Back patios, back porches decks, and courtyards must be kept free of trash and debris. Hanging rugs, indoor furniture, laundry, etc. are not permitted. Furniture permitted on the patio, back porch, and deck mush be made for outdoor use only. Bicycles may be kept on patios, back porches and decks neatly. No items may be stored or kept on lawn to include chairs, outdoor grills. Any items that are not removed if requested will be removed and a fee will be charged.

8. **Outdoor Grills:** Outdoor grills cannot be used inside an apartment, front porch, back patio or back porch. Grills being used must be a minimum of 10 feet away from any building. Charcoal grill may be used on decks if it is used a minimum of 10 feet away from building. Charcoal fires must be extinguished completely. The coals must be put in a container and deposited in a dumpster. Used coals cannot be brought inside or placed on patios or balconies. Storing items in these areas is a direct violation of state and local fire codes. Grills may only be stored after cooled, on patio, back porch or deck. Any grill left in unauthorized areas will be immediately removed and a fee may be charged.

9. **Trash Removal:** Please make sure all trash is bagged and placed in the dumpster. Lessee must contact the office if bulky items such as furniture or televisions need disposal. ANY VEHICLE BLOCKING A DUMPSTER WILL BE TOWED AT OWNER'S EXPENSE WITHOUT NOTICE). Trash is NOT to be left on porches, patios, decks, parking lot, lawn or courtyards. Resident will be charged a $35.00 violation fee for not disposing of trash per the agreement.

10. **Household Members and Guest:** All persons under the age of 16 must ALWAYS be supervised by a responsible adult . The Lessee shall be responsible for the conduct of household members and guests, including any damage done to the premises. Household members and guests shall not create disturbances of any nature. Quiet time is 8:00pm until 8:00am. Lessee must notify Property Manager in writing

1

Maurice Jackson (19-345) 000011

regarding guest residing beyond ten (10) days. If any other person resides with the Lessee without prior written authorization from the Lessor, the Lessor has the right to declare the rental agreement in default.

11. **Noises:** No Lessee shall make or permit to be made by household members or guests, any disturbing noises or interfere in any way with rights of other residents or the operation of the property by the Lessor or his agents.

12. **Crime Free Housing:** Lessee, any member of the household, or guest or other person under the Lessee's control shall not engage in or facilitate criminal activity on or near the property including, but not limited to, violent criminal activity or drug related criminal activity. Criminal activity also includes the use of, possession or dealing of any illegal substance. See Crime Free Housing Addendum.

13. **Aerials and Satellite Dishes:** The Lessee agrees to first obtain written consent from the Lessor as to the size and location of the equipment. Lessee must also provide to Property Manager proper liability insurance (#300,00) minimum) with a certificate of insurance naming Edgewood Villas as certificate holder to cover personal and physical damage that might be caused by satellite dish and all related components. The Lessee agrees that no radio wires or television aerials or their appurtenances shall be places on any building. No anchors or holes can be bored through or violate an exterior wall, door, window or drilled into or through any exterior location or surface. The satellite dish or components can not be affixed to or violate any door, roof, siding, fascia, soffit, porch, patio, deck, lawn or any exterior surface. No satellite dish or component can be located in or violate any common area or surface. Installation must not be in any location that may risk striking electrical or water lines or impair the buildings weatherproofing. Satellite dishes must be professionally installed.

14. **Window Coverings:** Mini-blinds are provided to create a uniform exterior appearance. Lessee is responsible for the care of these blinds. Blinds may not be removed. If Lessee elects to furnish draperies, Lessee must first notify Lessor, and in all events, such coverings must have white backing. No other window treatment will be permitted. Foil and other similar material shall not be placed in the windows or glass doors. In the event of a hurricane threat, the tape placed on windows shall be removed within a reasonable amount of time after the danger ceases.

15. **Interior and Exterior Alterations:** Alterations such as painting, wallpaper (strippable only), paneling, mirrored walls, change of light fixtures, etc., MUST HAVE PRIOR WRITTEN APPROVAL FROM THE MANAGER. Generally, the apartment must be restored to its original condition upon move-out. Alterations that the management and future residents deem acceptable may be left in the apartment and become property of the community. These MUST be approved before you move-out.

16. **Waterbeds:** Waterbeds are allowed by written permission from the Property Manager and insurance.

17. **Solicitors and Salespersons:** Solicitors and salespersons are strictly prohibited unless the manager grants permission. The person must have a letter of authorization, on apartment letterhead, signed by the manager. If the person does not show a copy of the letter, call the rental office immediately.

18. **Housekeeping Standards:** Lessee must follow pest control procedures, treatments and maintain housekeeping standards to ensure that safe and sanitary conditions are maintained. See Pest Control Addendum and Housekeeping Addendum.

19. **Parking:** Lessee must register vehicles with the office to receive a parking decal to park on the property. Only residents with valid driver's license on the lease with current vehicle registration may receive a decal. There are two (2) assigned parking spaces for each unit. These spaces may only be used by vehicles with a valid decal. The unit parking spaces may not be used for visitors or additional vehicles beyond the two (2) decal limit. Any vehicles without a decal must be in a visitor parking space. All vehicles must be parked in a space with bumpers facing inward and not over the sidewalk. Backing vehicles in spaces will not be tolerated and subject to immediate towing. If a vehicle is found in an assigned parking space without the appropriate decal, it will be subject to immediate towing. RECREATIONAL VEHICLES, LARGE TRUCKS, BOATS, OR BOAT TRAILERS ARE NOT PERMITTED ON THE PROPERTY). Parking must be parallel with painted lines. Do not park in handicapped parking space without legal decal. Motorcycles may be used only for entry and exit to the community and are to be parked only at the curb. They must be operated quietly. Kickstands with appropriate base must be used to avoid damage to blacktop. DECALS MUST BE RETURNED AT MOVE OUT OR A FEE OF $125 WILL BE CHARGED TO ACCOUNT.

20. **Non-Operational Vehicles:** Any vehicle that is inoperable to include flat tire, expired and/or stolen plates can be towed immediately at owner's expense. There is no 3-day warning.

21. **Car Washing and Repair:** Car washing and repair, including oil changes are strictly prohibited inside the community. Vehicles are subject to immediate towing if repairs are being made on property. Residents will be charged for any and all damages to, or clean-up of property including sidewalk, parking lot or grounds.

22. **Moving:** Moving of furniture and other bulky articles other than within the Lessee's own apartment shall be conducted on the premises only after the consent of the Lessor is first obtained. Any damage to the building or any property of the Lessor or to the person or property of anyone else by the moving of articles in and out of the premises by the Lessee shall be paid for by the Lessee causing such damage.

Maurice Jackson (19-345) 000012

23. **Pets:** No pets without written permission of management. Pets not exceeding 30 pounds at full growth are permitted Residents must pay additional deposits, fees and sign a pet addendum to the lease. See Pet Addendum.

24. **Pool:** If your community has a pool, residents and guests must abide by all pool rules and regulations and the rules posted at the pool. See Pool Rules Addendum.

25. **Lights:** Street exterior lights are inspected periodically. Please call the office to report that a light is out. Light bulbs are only supplied at move-in. Lessee is responsible for replacing bulbs at move-out.

26. **Flammables and Explosives:** Storage of flammable or explosive items are prohibited inside the premises.

27. **Appearance:** The hanging of rugs, laundry, towels, mops, or articles of clothing over the front porch railings, windowsills or on the back patio/porches is forbidden. Outside garbage containers other than those provided by the Lessor are forbidden on the demised premises. Bagged trash or recyclables may not be left outside around the leased premises.

28. **Fire Extinguisher:** The fire extinguisher is to be used only in the event of a fire in the apartment, building, or on the grounds of the property. If the fire extinguisher is used at any time, it should be reported to the Lessor immediately and brought to the office for recharge to assure continue protection. If an extinguisher is located within the leased premises, the Lessee should periodically check the gauge of the fire extinguisher to assure it remains charged and ready for use.

29. **Smoke and Carbon Monoxide Detector:** See Smoke and Carbon Monoxide Detector Addendum.

30. **Bicycles:** Bicycles and skateboards are prohibited on sidewalks, courtyards and pool area. Bicycles, etc. must be stored indoors or on the back patio.

31. **Vinyl and Wood Siding:** Where vinyl or wood siding is present on the exterior of the building, certain precautions are required. Grills must be kept at least ten feet away from the siding when in use. Hooks, screws and decorator items cannot be installed or attached to vinyl or wood siding. Charges for repair will be assessed to the Lessee if property is damaged.

32. **Alterations:** No alterations, painting or redecorating of a permanent nature may be done to the apartment, porch or patio.

33. **Common Areas:** The Lessee shall not obstruct sidewalks, courtyards and other grounds. No basketball goals are permitted on the property.

34. **House Plants:** Watertight containers or plastic plant trays must be used under all plants and Lessee will be responsible for damage to carpet.

35. **Water Damage:** The Lessee will be strictly held responsible for any damage or loss to this and other dwellings resulting from overflow from toilets, sinks bathtubs, or basins in the apartment due to Lessee neglect.

36. **No swimming pools or water hoses** of ANY kind allowed in/on property.

37. **No Loitering at any time.** Lessee may use unit back patio for exterior leisure as long as it does not interfere with the rights of other residents.

38. **No open containers of alcoholic beverages** permitted on the outside of apartment.

39. **Speed Limit:** Observe the 15-mph speed limit.

40. **Lease Clause Violations:** Resident understands that violations of any of the clauses contained in the lease or any covenants may result in immediate eviction proceedings.

41. **Property Manager/ Resident Agent:** The property manager responsible for your rental unit and registered agent of the owner for service of legal process.

Maurice Jackson (19-345) 000013

Edgewood Villas Apartments
**Rules and Regulations Addendum**

I agree and acknowledge having read and understood the Rules and Regulations Addendum for Edgewood Villas Apartments.

**The management staff appreciates your cooperation and consideration of these Community Rules and Regulations.**

_Maurice Jackson_      _1/18/16_            _Yolanda P_    _12/13/19_
Resident Signature          Date                   Property Manager         Date

Resident Signature           Date

4

Maurice Jackson (19-345) 000014

## POOL ADDENDUM
## POOLS ARE OPEN TO RESIDENTS OF EDGEWOOD VILLAS AND GUESTS WHO HAVE BEEN ISSUED A POOL PASS

1. Use pool at your own risk. We are not responsible for accidents or injuries.
2. No glass, food or drink in pool area.
3. No animals allowed.
4. Be considerate- no yelling or other loud noises.
5. No running, pushing or other dangerous horseplay.
6. Management reserves the right to deny use of pool to anyone at any time.
7. No diving.
8. Minors under the age of 16 must be accompanied by a guardian at least 18 years old and a member of the household.

9. Smoking and alcoholic beverages are not allowed on the pool grounds. Intoxicated patrons will be denied entry and asked to vacate the premises.

10. Pool may be closed at any time for maintenance and weather.

11. All patrons must wear lined swimsuits that are appropriate for public appearance in a family-friendly environment (no thongs, sports bras, basketball shorts, underwear, cut offs or denim shorts).

12. Children who are not potty trained must wear swim diapers while in the pool.

13. Diapers may not be changed in the pool area.

14. Pool seating and furniture is available on a first come, first served basis. Pool furniture must remain on the pool deck always and is strictly prohibited from the pool itself.

12. Only family-friendly and low-volume music is allowed in the pool area.

13. Persons with skin disorders, bandages, open wounds, eye, nose or mouth discharge may be refused entrance to the pool and pool area.

14. The pool will be cleared periodically to allow for safety checks.

15. Inflatable rafts, water wings/floaties and toys are not permitted in the pool (based on guidance from the CDC).

16. Young children needing flotation devices may only wear coast Guard approved life vests in the pool and must be within arm's reach of an adult guardian 18 years of age or older always.

17. The pool and pool area are off limits when closed. NO TRESPASSING IS ALLOWED. VIDEO SURVEILLANCE MAY BE ENFORCED.

18. Management will monitor the number of residents allowed inside the pool area at any time to stay within maximum capacity requirements. Access is granted on a first come, first served basis.

**19.   RIGHTS TO DISCONTINUE USE:** Resident agrees that EDGEWOOD VILLAS provide the pool for resident as an amenity. EDGEWOOD VILLAS may close or limit use of the pool at any time and for any reason without concession to the resident.

**20. RELEASE:** Resident agrees that if a personal injury, death or damage to private property happens using the pool or pool area, resident may not bring claim or lawsuit against EDGEWOOD VILLAS.

Resident is required to abide by the standards set forth in this addendum. Failure to abide by the POOL ADDENDUM STANDARDS to include the creation or maintenance of a threat to health or safety is a violation of the lease terms and can result in eviction.

| _Maurice Jackson_ | _12/17/18_ | | _Yolanda_ | _12/13/2018_ |
| Resident | Date | | Property Manager | Date |

| _____ | _____ |
| Resident | Date |

Maurice Jackson (19-345) 000016

## POOL ADDENDUM
## POOLS ARE OPEN TO RESIDENTS OF EDGEWOOD VILLAS AND GUESTS WHO HAVE BEEN ISSUED A POOL PASS

1. Use pool at your own risk. We are not responsible for accidents or injuries.
2. No glass, food or drink in pool area.
3. No animals allowed.
4. Be considerate- no yelling or other loud noises.
5. No running, pushing or other dangerous horseplay.
6. Management reserves the right to deny use of pool to anyone at any time.
7. No diving.
8. Minors under the age of 16 must be accompanied by a guardian at least 18 years old and a member of the household.

9. Smoking and alcoholic beverages are not allowed on the pool grounds. Intoxicated patrons will be denied entry and asked to vacate the premises.

10. Pool may be closed at any time for maintenance and weather.

11. All patrons must wear lined swimsuits that are appropriate for public appearance in a family-friendly environment (no thongs, sports bras, basketball shorts, underwear, cut offs or denim shorts).

12. Children who are not potty trained must wear swim diapers while in the pool.

13. Diapers may not be changed in the pool area.

14. Pool seating and furniture is available on a first come, first served basis. Pool furniture must remain on the pool deck always and is strictly prohibited from the pool itself.

12. Only family-friendly and low-volume music is allowed in the pool area.

13. Persons with skin disorders, bandages, open wounds, eye, nose or mouth discharge may be refused entrance to the pool and pool area.

14. The pool will be cleared periodically to allow for safety checks.

15. Inflatable rafts, water wings/floaties and toys are not permitted in the pool (based on guidance from the CDC).

16. Young children needing flotation devices may only wear coast Guard approved life vests in the pool and must be within arm's reach of an adult guardian 18 years of age or older always.

17. The pool and pool area are off limits when closed. NO TRESPASSING IS ALLOWED. VIDEO SURVEILLANCE MAY BE ENFORCED.

18. Management will monitor the number of residents allowed inside the pool area at any time to stay within maximum capacity requirements. Access is granted on a first come, first served basis.

19.   **RIGHTS TO DISCONTINUE USE:** Resident agrees that EDGEWOOD VILLAS provide the pool for resident as an amenity. EDGEWOOD VILLAS may close or limit use of the pool at any time and for any reason without concession to the resident.

20.   **RELEASE:** Resident agrees that if a personal injury, death or damage to private property happens using the pool or pool area, resident may not bring claim or lawsuit against EDGEWOOD VILLAS.

Resident is required to abide by the standards set forth in this addendum. Failure to abide by the POOL ADDENDUM STANDARDS to include the creation or maintenance of a threat to health or safety is a violation of the lease terms and can result in eviction.

| | |
|---|---|
| _Maurice Lewiston_ | _12/13/18_ |
| **Resident** | **Date** |

| | |
|---|---|
| _Yolanda P___ | _12/13/2018_ |
| **Property Manager** | **Date** |

_____
**Resident**          **Date**

## Edgewood Villas
## 1601 Neshota Drive
## Mobile, Al 36605

# Rental Payments

Rent is due on or before the 1st day of every month.  Payment may be made by cashier's check, or money order. CASH IS NEVER ACCEPTED.  Remember to include your apartment number on all payments.

Pay Agreements will be considered on a case by case basis for delinquent payments. Residents must speak with the Property Manager, in person, before the 5th of month for a Pay Agreement to be considered. If approved, the Agreement must be signed by the 5th and at least 50% of the rental payment paid at that time.

Rent is late at the end of the 5th day of every month.  If rent is not received by 5:00pm on the 5th, your payment is LATE, and a $45.00 late fee will be added to your account.  Partial payments will NOT be accepted after the 5th of the month if a Pay Agreement has not been approved.

Residents that have not paid their rent and are not on a pay agreement, will be sent to the attorney for non-payment of rent and all other charges associated with the unit.

 Residents that violate their Pay Agreement by not paying according to the agreement, will be sent to the attorney for non-payment of rent and all other charges associated with the unit within 24-hours of the expired Pay Agreement date.

This policy is considered an addendum to the lease agreement.  Violations may result in termination or non-renewal of the lease agreement.

I have read and understand the rental payment policy as outlined above (re-worded for my benefit) and in the agreement, I signed.

Resident: _Maurice Jackson_____  Date: _12 / 13 / 18___

Resident: _____  Date: _____

Resident: _____  Date: _____

Agent/Manager _Yulanda P_____  Date: _12/13/2018_

Maurice Jackson (19-345) 000019

Date: December 13, 2018

Resident Name:  Maurice T. Jackson
Address/Unit  042
Re:  Television Satellite Dishes

The FCC, effective January 1999, will allow small diameter satellite dishes in Apartment
Communities.  However the parameters for our property will be as follows:

- The satellite dish or any component can not be affixed to or violate the exterior of
  the building.

- No anchors or holes can be bored through or violate an exterior wall, door, window or
  drilled into or through any exterior location or surface.

- The satellite dish or components can not be affixed to or violate any door, roof, siding,
  fascia, soffit, patio, balcony, deck, lawn or any exterior surface.

- No satellite dish or component can be located in or violate any common area or surface.

- Resident must provide and attach to this page proper liability insurance ($300,000
  minimum) with a certificate of insurance to Property Manager naming  Edgewood Villas
  Apartments as certificate holder to cover personal and physical damage that might be
  caused by your satellite dish and all related components.

I have read and understand the parameter for installation and liability of a satellite at
1601 Neshota Drive, Unit _____042__ Mobile, AL 36605.


_Maurice Jackson_____         _____         _12/13/18_____
Resident                                Resident                        Date


_____                _____         _____
Resident                                Co-signer                       Date


_Yolanda P_____                  _12/13/18)____
Management Representative               Date


11/02

Maurice Jackson (19-345) 000020

**Outside Apartment**

Resident's yard area should be free of debris, and trash. No items should be stored on front porch. No furniture may be placed on front porch.

Patio/Decks should be clean and free of hazards.

Sidewalks and steps shall be clean and free of hazards.

Exterior doors shall be clean.

Windows should be clean and screens intact.

Parking lot shall be free of debris.

Grills must be stored on back patio/porch or deck.

Additional Standards

- Keep all air conditioning filters and window units clean and free from dirt;

- Keep all lavatories, sinks, toilets, and all other water and plumbing apparatus in good order and repair and shall use same only for the purposes for which they were constructed. Tenant shall not allow any sweepings, rubbish, sand, rags, hair, ashes, fabric towels, paper towels, grease, hair weave, sanitary napkins, diapers, baby wipes or other similar substances to be thrown or deposited therein. Any damage to any such apparatus, resulting from misuse, and the full cost of clearing stopped plumbing shall be borne by the Tenants. Any plumbing costs associated with snaking clogged sinks, toilets, showers, bathtubs, or drains will be incurred jointly by the Tenants;

- Deposit all trash, garbage, rubbish or refuse in the locations provided and shall not allow any trash, garbage, rubbish or refuse to be deposited or permitted to stand on the exterior of any building or within the common elements.

- Tenant(s) are responsible for replacing expired light bulbs.

- Any major damages resulting from activities in excess of normal wear and tear, abuse to the property, negligence may be charged to the Resident(s) and/or deducted from Security Deposit.

- Any damage done to resulting from negligence will be paid for by the Resident(s). This includes but is not limited to failure to regularly clean appliances and damaged A/C units.

Resident is required to abide by the standards set forth in this addendum. Failure to abide by the Housekeeping Standards to include the creation or maintenance of a threat to health or safety is a violation of the lease terms and can result in eviction.

| Maurice Jackson | 12/13/18 | Yolanda B | 12/13/18 |
| --- | --- | --- | --- |
| **Resident** | **Date** | **Property Manager** | **Date** |

| | |
| --- | --- |
| **Resident** | **Date** |

Maurice Jackson (19-345) 000021

# EDGEWOOD VILLAS

## TRASH ADDENDUM

There will be a $35 charge for Violation of the following Trash Disposal Policies.

All moving boxes, appliance boxes and large containers being disposed of must be broken down and placed into the dumpster.

Trash can not be stacked or placed into open boxes and simply placed along the area surrounding the dumpster.

All trash being thrown into the dumpster must be in bags that are tied or must be securely placed inside the dumpster and not found loose along the area surrounding the dumpster. Any loose trash found on the grounds belonging to a current resident will result in a $35 fine for each occurrence.

No moving boxes or trash bags are to be left on your patio or porch at any time.

The purpose of this Addendum is to ensure the continued cleanliness of the Community and to prevent infestation from rodents and wild animals that thrive in this environment.

Continued littering can be considered a violation and could result in the termination of your Lease Agreement.

_Maurice Jackson_
Resident Signature

_12/13/10_
Date

_Yulanda_
Management Representative

_12/13/2010_
Date

LSE/Ashland Lakes/01/01/08

Maurice Jackson (19-345) 000022

# Edgewood Villas - PET AGREEMENT

## (BECOMES PART OF THE LEASE CONTRACT)

**PLEASE NOTE: WE CONSIDER PETS A SERIOUS RESPONSIBILITY AND A RISK TO EACH RESIDENT IN THE DWELLING. IF YOU DO NOT PROPERLY CONTROL AND CARE FOR A PET, YOU WILL BE HELD LIABLE IF IT CAUSES ANY DAMAGE OR DISTURBS OTHER RESIDENTS.**

IN THE EVENT OR A VIOLATION OF THE CONDITIONS BELOW, THE OWNER/MANAGEMENT SHALL HAVE THE RIGHT TO IMMEDIATELY CANCEL THIS AGREEMENT AND REQUIRE THE PET OWNER/RESIDENT TO IMMEDIATELY REMOVE THE PET FROM THE PREMISES. CANCELLATION OF THIS AGREEMENT WILL NOT IMPLY A WAIVER OF THE RESIDENT'S RESPONSIBILITY FOR ANY DAMAGES.

**RESIDENT'S NAME: Maurice T. Jackson**          **APARTMENT #**          **042**

**A NON-REFUNDABLE PET FEE OF $350 IS DUE AT SIGNING OF PET AGREEMENT.**

**TERMS:**
**OWNER/MANAGEMENT AGREES TO WAIVE THE PET RESTRICTIONS OF THE RENTAL AGREEMENT / LEASE PROVIDED THAT THE RESIDENT/PET OWNER AGREES TO MEET THE FOLLOWING TERMS:**

- RESIDENT AGREES THAT THEY ARE RESPONSIBLE FOR THE PREVENTION AND CONTROL OF FLEAS. IT IS RESIDENT'S RESPONSIBILITY TO HAVE UNIT TREATED IF NECESSARY.

- ONLY THE PET/PETS LISTED AND DESCRIBED BELOW ARE AUTHORIZED UNDER THIS AGREEMENT. THE OWNER/MANAGEMENT MUST APPROVE ADDITIONAL OR OTHER PETS.

- PET/PETS WILL NOT CAUSE DANGER, DAMAGE, NUISANCE, NOISE, HEALTH HAZARD, OR SOIL THE APARTMENT, PREMISES, GROUNDS, COMMON AREAS, WALKS, PARKING AREAS, LANDSCAPING OR GARDENS. RESIDENTS AGREES TO CLEAN UP AFTER PET/PETS AND AGREES TO ACCEPT FULL RESPONSIBILITY AND LIABILITY FOR ANY DAMAGES, INJURY OR ACTIONS ARISING FROM OR CAUSED BY HIS/HER PET.

- RESIDENT AGREES TO REGISTER THE PET/PETS IN ACCORDANCE WITH THE LOCAL LAWS AND REQUIREMENTS. RESIDENTS AGREE TO IMMUNIZE THE PET/PETS IN ACCORDANCE WITH LOCAL LAWS AND REQUIREMENTS AND PROVIDE IMMUNIZATION PROOF EACH YEAR TO PROPERTY MANAGER.

- RESIDENT WARRANTS THAT THE PET/PETS ARE HOUSEBROKEN. RESIDENT WARRANTS THAT THE PET/PETS HAVE NO HISTORY OF CAUSING PHYSICAL HARM TO PERSONS OR PROPERTY, SUCH AS BITING, SCRATCHING, CHEWING, ETC.... AND FURTHER WARRANTS THAT THE PET/PETS HAVE NO VICIOUS HISTORY.

- THE RESIDENT AGREES TO OBSERVE THE FOLLOWING REGULATIONS:

- LIMIT 2 PETS PER HOUSEHOLD

**DOGS AND CATS:**
- o   CANNOT WEIGHT MORE THAN 30 POUNDS. CANNOT BE CONSIDERED AN AGGRESSIVE BREED AS DEFINED BY MANAGEMENT.
- o   MUST BE CONTROLLED AT ALL TIMES. MUST BE KEPT ON A SHORT LEASH WHILE IN COMMON AREAS OR ON THE GROUNDS.
- o   BARKING WILL NOT BE TOLERATED IN THAT IT IS CONSIDERED TO BE A NUISANCE TO OTHER RESIDENTS
- o   PROPER DISPOSAL OF CAT LITTER (SECURELY BAGGED) WILL BE DONE ON A FREQUENT BASIS. ODORS FROM CAT LITTER WILL NOT BE TOLERATED.
- o   DOGS WILL NOT BE TIED UP ON BALCONIES OR PATIO AREAS AT ANY TIME AND WILL BE WALKED AWAY FROM BUILDINGS AND WALKWAYS.
- o   ALL PET FECES OUTSIDE MUST BE PICKED UP, BAGGED AND DISPOSED OF IN THE DUMPSTER.

**BIRDS:**
- o   MUST BE PROPERLY CAGED. SEEDS AND DROPPINGS WILL BE SHIELDED OR CAUGHT TO PREVENT THE ACCUMULATION OR DAMAGE TO THE CARPET/FLOORS.

**FISH:**
- o   AQUARIUMS WILL NOT LEAK, AND WILL BE CLEANED ON A REGULAR BASIS TO PREVENT FOUL WATER AND ODORS.

| PET DESCRIPTION: KIND | TYPE/BREED | COLOR | NAME | AGE | WEIGHT |
|---|---|---|---|---|---|
| | | | | | |

_Mrs._ I/WE DO NOT HAVE OR OWN A PET AND IF THAT STATUS CHANGES I/WE WILL INFORM THE OFFICE IMMEDIANTELY TO ASSURE THE ABOVE TERMS AND CONDITIONS ARE FOLLOWED.

RESIDENT _Maurice Jackson_          DATE _12/13/16_          RESIDENT _____          DATE _____

MANAGEMENT _Yolanda B_          DATE _12/13/16_

Maurice Jackson (19-345) 000023

1

### Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**

*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

**Lessor's Disclosure**

(a)  Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

  (i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

  _____

  (ii) _YP_ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b)  Records and reports available to the lessor  (check (i) or (ii) below):

  (i) _____ Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

  _____

  (ii) _____ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgment** (initial)

(c)  _MJ_ Lessee has received copies of all information listed above.

(d)  _MJ_ Lessee has received the pamphlet *Protect Your Family from Lead in Your Home*.

**Agent's Acknowledgment** (initial)

(e)  _YP_ Agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

_EDGEWOOD VILLAS_

| | | | |
|---|---|---|---|
| Lessor | Date | Lessor | Date |
| _Maurice Jackson_ | _12/31/18_ | | |
| Lessee | Date | Lessee | Date |
| _Yolanda P_ | | | |
| Agent | Date | Agent | Date |

Maurice Jackson (19-345) 000024

# Concession Addendum

Edgewood Villas Apartments, hereby present to **Maurice T. Jackson**, beginning **December 13, 2018,** of the subsequent apartment address at

1601 Neshota Drive, Unit **042** the following concession amount of **$331.00** to be credited to your account the account for the remaining days of November.

Reason:
Move-In Special: ½ **Off December**

Furthermore, if the Lease term is not fulfilled, Lessee agrees to pay the Lessor the concession totaling the **Amount of Concession,** upon move-out.

_Maurice Jackson_ _____    12 / 13 / 18
Resident                                      Date


_____    _____
Resident                                      Date

_Yalanda P_ _____    12/ 13/ 18
(Property Manager                          Date

Maurice Jackson (19-345) 000025

# LEASE ADDENDUM ON MOLD

To minimize the occurrence and growth of mold in the leased premises (the "Leased Premises") described in the attached lease agreement (the "Lease"), the undersigned resident (the "Resident") hereby agrees to the following:

1.  MOISTURE ACCUMULATION. Resident shall remove any visible moisture accumulation in or on the Leased Premises, including on walls, windows, floors, ceilings, and bathroom fixtures; mop up spills and thoroughly dry affected area as soon as possible after occurrence; use exhaust fans in kitchen and bathroom when necessary; and keep climate and moisture in the Leased Premises at reasonable levels.

2.  APARTMENT CLEANLINESS. Resident shall clean and dust the Leased Premises regularly and shall keep the Leased Premises, particularly kitchen and bath, clean.

3.  NOTIFICATION OF MANAGEMENT. Resident shall promptly notify management in writing of the presence of the following conditions:

    (i)    A water leak, excessive moisture or standing water inside the Leased Premises;
    (ii)   A water leak, excessive moisture or standing water in any community common area;
    (iii)  Mold growth in or on the Leased Premises that persists after Resident has tried more than twice to remove it with household cleaning solution, such as Lysol or Pine-Sol disinfectants, Tilex Mildew Remover or Clorox, or a combination of water and bleach; and
    (iv)   A malfunction in any part of the heating, air-conditioning or ventilation system in the Leased Premises.

4.  LIABILITY. Resident shall be liable to the owner of the Leased Premises (the "Owner") for damages sustained to the Leased Premises or to the Resident's person or property as a result of Resident's failure to comply with the terms of this Addendum.

5.  VIOLATION OF ADDENDUM. Violation of this Addendum shall be deemed a material violation and default under the terms of the Lease, and Owner shall be entitled to exercise all rights and remedies it possesses against Resident at law or in equity.

6.  ADDENDUM SUPERSEDES LEASE. In case of a conflict between the provisions of this Addendum and any other provision of the Lease, the provisions of this Addendum shall govern. This LEASE ADDENDUM ON MOLD is incorporated into the Lease executed or renewed on **December 13, 2018** between Owner and Resident.

RESIDENT SIGNATURE _Maurice Jackson_ DATE _12/13/18_

RESIDENT SIGNATURE _____ DATE _____

OWNER/MANAGER'S SIGNATURE _Yolanda P_ DATE _12/13/18_

MS/LADONNA/FORM/MOLDADDENDUM          4/11/02

# Edgewood Villas    UNIT #_____

**1601 Neshota Drive**
**Mobile, AL 36605**
**251-478-4341**

## Parking and Decals Addendum

Assigned parking spaces and decals are mandatory. Residents must register their vehicles with the office to receive a parking decal to park at Edgewood Villas. You must be a household member on the lease, hold a valid driver's license and current vehicle registration in order to receive a decal. A household may only receive up to two (2) decals and are not transferrable.

There may be up to two (2) assigned parking spaces for each unit. These spaces MAY ONLY be used by vehicles with an Edgewood Villas' decal. They MAY NOT be used for visitors or additional vehicles beyond the (2) limit decal rule. Any vehicle WITHOUT a decal MUST be in a visitor parking space. Decal must be placed on exterior window, bottom corner of driver's side.

**All vehicles MUST be parked in a space with bumpers facing inward and not over the sidewalk. Backing vehicles in spaces will NOT BE TOLERATED. Vehicles will be subject to immediate towing.**

Parking spaces are numbered based on unit numbers. This space is the unit's assigned space(s) if a valid Property parking decal has been issued. Otherwise, the space(s) MUST remain unused.

If a Resident only has one (1) vehicle, or no vehicles, the spaces MUST be left empty. The spaces CANNOT be used for visitor parking. If a vehicle is found in an assigned parking space without the appropriate decal, it will be subject to immediate towing.

This policy is considered an addendum to the lease agreement.  Violations may result in termination or non-renewal of the lease agreement.

_Maurice Jackson_                    _12/3/18_
**Resident**                     **Date**
DL# _1006691_
**State** _Mobile, AL 36609. 3316_

**Make**_____
**Model**_____
**Color** _Black_
**License Plate #State**_____
**Decal #**_____

_____        _____
**Resident**                     **Date**
DL#_____
**State**_____

**Make**_____
**Model**_____
**Color**_____
**License Plate #State**_____
**Decal #**_____

_Yolanda P_  _12/3/18_
**Property Manger**        **Date**

## Edgewood Villas

### Pest Control Addendum

All Residents are required to assist Management in pest control procedures and treatment programs. Failure to follow the pest control requirements and/or Pest Control Vendor is a breach of Resident's Lease.

Resident(s) acknowledges that the unit has been treated for pests and that the Owner/Agent has inspected the unit and is unaware of any pest, including bedbugs in the apartment.

_____ **Resident Initials**

Residents are required to immediately notify Management of any certain, or suspected pest problem in their unit, in a common area, or in a neighbor's unit. Failure of Resident to do so is a violation of the Lease. If Management learns that a unit has had an ongoing pest problem that was not reported, this may be grounds for lease termination, non-renewal, and/or charging Resident for pest treatments, lost rent and damages in Resident's unit or in other units or common areas. _____ **Resident Initials**

Resident (s) understands that all pest control measures and/or treatments for bedbugs will be charged to the account and payable immediately. _____ **Resident Initials**

Resident agrees to indemnify and hold the Lessor/Management harmless from any actions, claims, losses, damages and expenses including but not limited to attorney's fees that Lessee may incur as a result of the negligence of the Resident(s) or any guest occupying or using the premises.

It is acknowledged that the Lessor/Management shall not be liable for any loss of personal property to the Resident, as a result of an infestation of bedbugs.

Because pests may pose a risk to the health and safety of other Residents, breach of this addendum is a material breach of the lease and we may pursue any rights and remedies available under the lease terms or applicable law, including lease termination.

I agree and acknowledge having read and understood this addendum.

| _Maurice Jackson_ | _12/13/18_ | _Yalanda P_ | _12/13/18_ |
|---|---|---|---|
| **Resident** | **Date** | **Property Manager** | **Date** |

| | |
|---|---|
| **Resident** | **Date** |

**Edgewood Villas**
**1601 Neshota Drive**
**Mobile, Al 36605**

# Utility Requirements

Residents are required to maintain electricity and gas services at their apartment as part of the lease agreement.

If your electric services are ever physically disconnected, you will be liable for any cost of repair and/or replacement of any appliances. You will also receive a notice to vacate if the utilities are not connected within 48 hours.

_Mauma Ericson_
**Signature**

_12 / 13 / 18_
**Date**

_____
**Signature**

_____
**Date**

_Yolanda P_
**Manager or Agent**

_12/13/18_
**Date**

Maurice Jackson (19-345) 000029

# Edgewood Villas

## Crime Free Housing Addendum

1. The Tenant, any member of the Tenant household, or a guest or other person under the Tenant's control shall not engage in or facilitate criminal activity on or near the project, including, but not limited to, violent criminal activity or drug related criminal activity.

2. The Tenant or any other member of the Tenant household shall not permit the dwelling unit to be used for, or to facilitate, criminal activity including, but not limited to, violent criminal activity or drug related criminal activity.

3. "Violent Criminal Activity" means any felonious criminal activity that has one of its elements the use, attempted use, or threatened use of physical force against the person or property of another.

4. "Drug related Criminal Activity" means the illegal manufacture, distribution, or use, or possession with intent to manufacture, sell, distribute or use, of a controlled substance (as defined in Section 102 of the Controlled Substance Act {21 U.S.C. 802}.

5. One or more violation of Section 1 or Section 2 of this lease addendum constitutes a substantial violation of the lease and a material non-compliance with the lease. Any such violation is grounds for termination of tenancy and eviction from the unit.

6. Proof of violation shall be preponderance of the evidence, unless otherwise provided by law.

7. In case of any conflict between the provision of this lease addendum and other provisions of the lease, the provisions of this lease addendum shall govern.

8. This Lease Addendum in incorporated into the lease between the Landlord and the tenant.

_____        _____
Resident            Date

_____  _Yolanda Po_  1.2/13/18
                 Property Manager      Date

_____        _____
Resident            Date

Maurice Jackson (19-345) 000030

# Edgewood Villas

**1601 Neshota Drive**
**Mobile, AL 36605**
**251-478-4341**

## <u>Smoke Detector Addendum</u>

The premises were delivered to Resident with installed and functional smoke detector device.

Resident acknowledges the detector was tested, operational and working properly.

Resident shall perform tests to determine if the device is operating properly at least once a month.

Resident shall inform the Property Manager immediately of any defect or malfunction or failure of any detector device.

By initialing, Resident understands that device is battery operated and shall be each Resident's responsibility to:

_M.J_   Ensure the battery is always in operating condition;

_M.J_   Notify Property Manager if battery needs to be replaced or;

_M.J_   Notify Property Manager if detector device does not work properly.

Resident shall allow access to the unit for the purpose of verifying that required detector device is in place and operating properly or to conduct maintenance service, repair or replacement as needed.

Resident will be charged for any missing or broken detectors including batteries.

_Maurice Jackson_          _12/13/18_
Resident                        Date


_____          _____
Resident                        Date

_Yolanda P_ — _12/13/18_
Property Manager          Date

Maurice Jackson (19-345) 000031

# Edgewood Villas

## Housekeeping Standards Addendum

In order to ensure the Property is maintained in a safe and sanitary condition, uniform standards of housekeeping have been established and must be followed by all Residents.

Each apartment will be inspected at least two (2) times per year to determine compliance with the standards. Upon completion of an inspection, the Resident will be notified in writing if they fail to comply with the standards. The Resident will have seven (7) days to correct the problem, unless it is a dangerous condition, which requires an immediate repair.

A second inspection will be completed on the eighth (8) day. Failure of a second inspection will constitute a violation of the lease terms and may result in a termination of the lease.

**Inside Apartment**
**General**
Walls should be clean, free of dirt, grease, holes, cobwebs, and fingerprints.
Floors should be clean, clear, dry and free of hazards.
Ceilings should be clean and free of cobwebs.
Windows should be clean and not nailed shut. Blinds should be intact. No broken window panes.
Woodwork should be clean, free of dust, holes or scratches.
Doors should be clean, free of holes and doorknobs intact.
Heating units should be dusted and not used for storage of any kind.
Trash shall be disposed of properly in outside garbage dumpsters.
Entire unit should be free of rodent or infestations of any kind.

**Kitchen**
Stove should be clean and free of old food and grease.
Refrigerator/freezer should be clean. Refrigerator must be moved and swept and mopped under. Vent at the bottom of refrigerator should be removed, cleaned and replaced.
Cabinets should be clean and neat. Cabinet surfaces and countertops should be free of grease and spilled food. Cabinets should not be overloaded.
Exhaust fan should be free of grease and dust.
Sink should be clean, free of grease and garbage. Dirty dishes should be washed and put away daily.
Food storage areas should be neat and clean without any spilled or spoiled food.
Trash materials should be stored separately in a covered and leakproof container until removed to dumpster.

**Bathroom**
Toilet and tank should be clean and odor free.
Tub and shower should be clean and free of mildew and mold. Shower curtain should be in place to prevent water from getting on floor.
Sink should be clean.
Exhaust fan should be free of dust and grease.
Floor should be clean and dry.

**Closets**
Closets should be neat and clean. No flammable materials may be stored in the apartment.

# INSPECTION CHECK-LIST

## Edgewood Villas Apartments

Tenant Name:

Address of Rental Unit: 1601 Neshota Drive, Unit ___42___, Mobile, Al 36605

This form is designed to assist in recording the condition of a rental unit upon moving in and moving out. To be most useful, it should be filled out in the presence of the property owner and the tenant, and each should retain a signed and dated copy. For each line item, either check "OK" or describe any problems present.

| | | Move-In Condition | | Move-Out Condition |
|---|---|---|---|---|
| **Kitchen** | OK | If not OK, describe problems | OK | If not OK, describe problems |
| General Cleanliness | | | | |
| Sink | | | | |
| Counters | | | | |
| Light Fixtures | | | | |
| Cabinets | | | | |
| Oven/range | | | | |
| Refrigerator | | | | |
| Outlets | | | | |
| Walls & Ceilings | | | | |
| Floor | | | | |
| Windows | | | | |
| Other (describe) | | | | |
| **Bathroom** | OK | If not OK, describe problems | OK | If not OK, describe problems |
| General Cleanliness | | | | |
| Toilet | | | | |
| Sink | | | | |
| Tub or Shower | | | | |
| Mirror | | | | |
| Waterproof floor | | | | |
| Walls & Ceiling | | | | |
| Outlets | | | | |
| Window or fan | | | | |
| Other (describe) | | | | |

| | Move-In Condition | | Move-Out Condition | |
|---|---|---|---|---|
| **Other Room:** | OK | If not OK, describe problems | OK | If not OK, describe problems |
| General Cleanliness | | | | |
| Walls & Ceiling | | | | |
| Floor/Carpet | | | | |
| Light Fixtures | | | | |
| Outlets | | | | |
| Windows | | | | |
| Other (describe) | | | | |
| **Miscellaneous** | OK | If not OK, describe problems | OK | If not OK, describe problems |
| Heating system | | | | |
| Water pressure | | | | |
| Entry doors | | | | |
| Lock | | | | |
| Smoke Detector | | | | |
| Fire Extinguisher | | | | |
| Other (describe) | | | | |

**Use the space below to note any disagreements to the checklist:**

**Move-In:**                              **Move-Out:**

Date:

Tenant:

Tenant:

Property Manager:

Maurice Jackson (19-345) 000034

ELECTRONICALLY FILED
9/4/2020 1:16 PM
02-CV-2020-901867.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

ANDREA DIXON, as Personal     \*
Representative of the ESTATE OF     \*
MAURICE JACKSON, deceased,     \*
    \*
   Plaintiff,     \*
    \*
v.     \*     CASE NO.: _____
    \*
THE EDGEWOOD GROUP, LTD,     \*
d/b/a EDGEWOOD VILLA     \*
APARTMENTS; CUMBERLAND     \*
REAL ESTATE SERVICES, INC.;     \*
THE MITCHELL COMPANY, LLC;     \*
and FICTITIOUS PARTIES,     \*
    \*
    \*
   Defendants.     \*

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS

COMES NOW, Plaintiff, by and through undersigned counsel, and propounds the following Interrogatories and Requests for Production of Documents to all Defendants pursuant to the *Alabama Rules of Civil Procedure*.  Production of the requested materials is to be made at the offices of counsel for Plaintiff, located at 205 Church Street, Mobile, Alabama 36602 (P.O. Box 43, 36601) or electronically at cpotts@briskman-binion.com and tracy@briskman-binion.com.

"You" and "your" means and refers to the Party responding to these Interrogatories.

Temporal Scope: Unless otherwise stated, the temporal scope for responses to

these Interrogatories is January 1, 2012, to the present.

## INTERROGATORIES

1.    Please identify by name, address and telephone numbers the following

individuals with your company:

        a.    Owners, partners, shareholders, and/or members;

**RESPONSE:**

        b.    Officers and directors, with job titles;

**RESPONSE:**

        c.    Records custodian;

**RESPONSE:**

        d.    General manager or director for day-to-day activities as it
            pertains to Edgewood Villas Apartments in Mobile, Alabama
            (hereinafter referred to as "Edgewood Villas").

**RESPONSE:**

2.    Please describe the relationship between you and the other Defendants

in this case.

**RESPONSE:**

3.    Please describe the computer operating and document management

systems (hardware and software) utilized by you in the operation of your business,

including, but not limited to, information concerning personal communication

devices issued by you to any of your employees and the identities of all computer service technicians and/or vendors used by use in connection with same.

**RESPONSE:**


4.     Please state your records retention policy, where that policy is published and/or maintained and how that policy is made known to your employees.

**RESPONSE:**


5.     Please describe in detail the training, if any, of your employees with respect to management and/or operations of apartment complexes, generally, and Edgewood Villas Apartments in Mobile, Alabama, specifically.  Further, please state all training that you provide to your employees that specifically relates, in any way, to fire/smoke detectors.

**RESPONSE:**


6.     Please describe in detail all communications between you and

          a.     Plaintiff, Andrea Dixon;

 **RESPONSE:**

          b.     Plaintiff's son, Maurice Jackson;

**RESPONSE:**

      c.     any member of their family; and,

**RESPONSE:**

      d.     any representative of their family.

**RESPONSE:**


    7.    Please state your understanding, if any, of statutory and ordinance requirements in Mobile, Alabama, imposed on you with respect to your responsibilities as to

      a.     habitability;

**RESPONSE:**

      b.     delegation or non-delegation of responsibilities, including as to providing functional fire/smoke detectors;

**RESPONSE:**

      c.     compliance with applicable city ordinances and/or building or fire codes;

**RESPONSE:**

      d.     reporting requirements to local or state agencies; and

**RESPONSE:**

      e.     providing, installing, inspecting, maintaining, and ultimately replacing functioning fire/smoke detectors/alarms into apartment units under your ownership, control and/or management.

**RESPONSE:**

8.      Please identify by name, address and telephone number all prior tenants/occupants of the apartment leased by Maurice Jackson at Edgewood Villas.

**RESPONSE:**

9.      Please describe all verbal and written complaints and/or requests for maintenance by anyone relating to the apartment leased by Maurice Jackson at Edgewood Villas, generally, and as to the subject FireX GC smoke detector, specifically, from January 1, 2012, to the present.

**RESPONSE:**

10.     Please identify by name, address and telephone number all of your employees who have any discoverable knowledge or information concerning the leasing and occupancy of the apartment by Maurice Jackson at Edgewood Villas, including, but not limited to, the leasing process with Maurice, complaints and requests for maintenance, and all inspections of the subject FireX GC smoke detector.

**RESPONSE:**

11.    Please describe any and all complaints or concerns, if any, voiced or expressed by anyone to you concerning Maurice Jackson at any time for any reason.

**RESPONSE:**

12.    Please describe any and all complaints or concerns, if any, voiced or expressed by you, in writing and/or verbally, to Maurice Jackson at any time for any reason.

**RESPONSE:**

13.    Please identify by name, address and telephone number all of your vendors or independent contractors, if any, that performed any services for you at Edgewood Villas, as such services pertained to inspections, maintenance and/or removal of fire/smoke detectors contained within apartment units, generally, and with respect to the apartment leased by Maurice Jackson.

**RESPONSE:**

14.    Please state whether you have made demand on any other Defendant in this lawsuit, and/or non-party, for defense and indemnity for the claims asserted in this suit.  If so, please identify upon whom such a demand has been made and state the factual and legal basis for such demand.

**RESPONSE:**

15.    Please state the existence and limits of any policy of insurance, primary and/or excess/umbrella, including the name of the insurance company, that may provide liability coverage to you to satisfy any judgment that may be rendered against it in this case.  Please state also whether a defense is being provided pursuant to a reservation of rights by the insurance company to deny coverage as to liability.

**RESPONSE:**

16.    Please describe all facts known to you, whether based upon your personal knowledge or by second-hand information, relating to the fire and death of Maurice Jackson that occurred on June 13, 2019.

**RESPONSE:**

17.    Please identify by name, address and telephone number all of your employees who interacted, in any way, with any representatives of the Alabama Fire Marshall's office and/or the Mobile Fire Department at any time during the temporal scope of this discovery, including after the June 13, 2019, fire and death of Maurice Jackson.

**RESPONSE:**

18.    Please identify by name, address and telephone number all experts hired by you to investigate any aspect of the fire that occurred at Edgewood Villas on June 13, 2019; the facts found by any such expert; the opinions to be offered by such expert(s); and the existence and description of all communications and reports of and between you and/or your lawyers and any such expert.

**RESPONSE:**


19.    Please state whether, at any time known to you, a fire loss risk assessment was performed at Edgewood Villas.  If so, please state the name, address and telephone number of the person or entity that performed the assessment, whether a fire risk assessment report was generated and who currently has possession of the report.

**RESPONSE:**


20.    Please also state whether a building or property inspection was performed at the time the property was purchased by The Edgewood Group Limited Partnership a/k/a The Edgewood Group, LTD.  If so, please state the name, address and telephone number of the person or entity that performed the inspection, whether an inspection report was generated, and who currently has possession of the report.

**RESPONSE:**

21.    Please describe in detail all post-remedial action, in any, performed by you or on your behalf relating to the fire of June 13, 2019, and the death of Maurice Jackson resulting from same.

**RESPONSE:**


22.    Please describe all other fire events (including dates of occurrence) occurring at Edgewood Villas which resulted in in injury or death  to any individual (including identity, address and telephone number) from the time that the property was purchased by The Edgewood Group Limited Partnership a/k/a The Edgewood Group, LTD to the present.

**RESPONSE:**


23.    Please state all policies, procedures and/or guidelines, if any, under which you are governed that relate, in any way, to purchasing, providing, installing, inspecting, maintaining, and removing/replacing fire/smoke detectors in apartment units owned, managed or operated by you, generally, and specifically, with Edgewood Villas in Mobile, Alabama.

**RESPONSE:**

24.    Please state from whom you purchase fire/smoke detectors, generally, and specifically, from whom you purchased the FireX GC smoke detector that is at issue in this case. Further, please state the following:

      a.    the date that said FireX GC smoke detector was purchased by you or on your behalf;

**RESPONSE:**

      b.    when the subject FireX GC smoke detector was received by you;

**RESPONSE:**

      c.    the subject FireX GC smoke detector's disposition after it was received by you or held by some other person or entity on your behalf;

**RESPONSE:**

      d.    when and by whom (*i.e.*, the individual by name, address and telephone number) the subject FireX GC smoke detector was installed in the apartment leased by Maurice Jackson;

**RESPONSE:**

      e.    when and by whom (*i.e.*, the individual by name, address and telephone number) the subject FireX GC smoke detector was last inspected or serviced before June 13, 2019; and,

**RESPONSE:**

      f.    describe all purchase documents relating to the purchase of the subject FireX GC smoke detector, including user guide(s)/manual(s), installation and maintenance information and the location of said documents.

**RESPONSE:**

25.     Please state whether or not any disciplinary action was taken by you against any person or entity, or by any person or entity against you, as a result of the fire of June 13, 2019, at Edgewood Villas that resulted in the death of Maurice Jackson.  If so, state

        a.     the identity of the person or entity against whom the action was taken;

**RESPONSE:**

        b.     the identity of the person or entity imposing the disciplinary action;

**RESPONSE:**

        c.     the facts and grounds upon which the disciplinary action was taken; and,

**RESPONSE:**

        d.     the form of the disciplinary action (*i.e.*, the penalty imposed).

**RESPONSE:**

26.     Please identify by name, address and telephone number the real estate agent representing The Edgewood Group Limited Partnership, a/k/a The Edgewood Group, LTD, for the purchase of the property identified as 1601 Neshota Drive, Mobile, Alabama.  In addition, please identify by name, address and telephone number the real estate agent representing the seller and the name, address and telephone number the closing agent for the purchase of said property.

**RESPONSE:**


## REQUESTS FOR PRODUCTION

1.     All written (paper and electronic) materials that pertain, in any way, to

    a.     Maurice Jackson; and/or,

    b.     the fire that occurred on June 13, 2019, at Edgewood Villas Apartments that resulted in the death of Maurice Jackson.

**RESPONSE:**


2.     Policies and procedures; operational or management manuals; daily, weekly or monthly "to do" lists; punch-lists; rental check-lists; and safety guidelines that relate to the management and/or operation of apartment complexes, generally, and Edgewood Villas Apartments in Mobile, Alabama, specifically, including all documents and things (such as training videos, power point presentations, seminar materials, etc.) concerning

    a.     the leasing process with a new or prospective tenant;

    b.     turning over of apartments from one tenant to a new tenant;

    c.     inspections of apartments and apartment fixtures (including fire/smoke detectors);

    d.     maintenance of apartments and apartment fixtures (including fire/smoke detectors);

    e.     replacement of apartment fixtures (including fire/smoke detectors);

    f.      documenting and responding to tenants' complaints or calls for maintenance and/or replacement of apartment fixtures (including fire/smoke detectors);

    g.      training of employees as to any aspect of apartment management and operations, including inspections and maintenance of apartment units generally and fire/smoke detectors, specifically.

**RESPONSE:**

3.     All maintenance records, including requests for maintenance, relating directly or indirectly to the apartment rented by Maurice Jackson at Edgewood Villas.

**RESPONSE:**

4.     All purchase documents relating to the FireX model GC fire/smoke detector that was in the apartment rented by Maurice Jackson at Edgewood Villas, including invoices, purchase orders and receipts; manufacturer's recommendations regarding installation, maintenance and replacement of said device; and, user guides/manuals relating to same.

**RESPONSE:**

5.     All contracts, invoices, purchase orders and/or service agreements with all vendors or independent contractors hired by you or those acting on your behalf to inspect, maintain and service any apartment issue or fixture, including fire/smoke detectors, relating directly or indirectly to the apartment rented by Maurice Jackson

at Edgewood Villas.

**RESPONSE:**

6.     All contracts whereby you are either the indemnitor or the indemnitee

with respect to a claim of indemnity asserted by or against you as a result of the fire

of June 13, 2019, at Edgewood Villas that resulted in the death of Maurice Jackson.

**RESPONSE:**

7.     All inspection reports of Edgewood Villas (or the predecessor

apartment complex by name) located in Mobile, Alabama, associated or in

connection with the purchase of the property by The Edgewood Group Limited

Partnership, a/k/a The Edgewood Group, LTD.

**RESPONSE:**

8.     All inspection reports of Edgewood Villas, generally, with respect to

safety and habitability, generally, and/or with respect to the apartment unit rented by

Maurice Jackson, specifically, prior to the fire of June 13, 2019, that resulted in the

death of Maurice Jackson, including any fire loss risk assessments.

**RESPONSE:**

9.     All documents, video and/or audio recordings, emails, letters,

correspondence, text messages and internal memos of conversations between you

and Plaintiff, Andrea Dixon; her son, Maurice Jackson; any family member of Ms. Dixon or Maurice; and any representative of same.

**RESPONSE:**

10.    Liability insurance policies (primary and excess/umbrella) that provides coverage to you for this claim.

**RESPONSE:**

11.    Documents relating to any subsequent remedial measures made by or at your direction at Edgewood Villas in connection with or as a result of the fire of June 13, 2019, that resulted in the death of Maurice Jackson.

**RESPONSE:**

12.    Documents relating to any disciplinary action taken by or against you, or any of your employees, as a result of the fire of June 13, 2019, that resulted in the death of Maurice Jackson.

**RESPONSE:**

13.    The fire/smoke detector maintenance and replacement logs for Edgewood Villas (including its predecessor) for the years 2001 to the present[1].

**RESPONSE:**

---

[1] The relevancy of this lengthy temporal period is due to the age of the FireX GC smoke detector at issue (17 years from date of manufacture).

14.     All documents that mention Maurice Jackson by name and/or refer to him indirectly as a tenant of Edgewood Villas.

**RESPONSE:**

15.     Expert reports relating to the fire of June 13, 2019, and/or the FireX GC smoke detector involved in this case.

**RESPONSE:**

16.     All documents and things that you claim supports any claim or defense asserted by you in this case.

**RESPONSE:**

17.     All documents and things that you intend to introduce as evidence in at trial of the case.

**RESPONSE:**

18.     All closing documents and records in connection with the purchase of the Edgewood Villas property by The Edgewood Group Limited Partnership, a/k/a The Edgewood Group, LTD.

**RESPONSE:**

19.     All contracts between you and any other named Defendant in the case.

**RESPONSE:**


20.     All contracts that were in effect on June 13, 2019, between you and any other person or entity that relates, in any way, to the management or operation of Edgewood Villas, including, but not limited to, the installation, inspection, maintenance and replacement of fire/smoke detectors in apartment units at Edgewood Villas.

**RESPONSE:**


21.     Documents that relate to major or significant repairs and renovation work at the Edgewood Villas from the time that the property was purchased by The Edgewood Group Limited Partnership, a/k/a The Edgewood Group, LTD, to the present.

**RESPONSE:**


*/s/Charles J. Potts*

DONALD M. BRISKMAN (BRI014)
CHARLES J. POTTS (POT007)
Attorneys for Plaintiff, Andrea Dixon, as
Personal Representative of the Estate of
Maurice Jackson, deceased.

OF COUNSEL:

**BRISKMAN & BINION, P.C.**
Post Office Box 43 (36601)
205 Church Street (36602)
Mobile, Alabama
*T*:  251.433.7600
*F*:  251.433.4485
dbriskman@briskman-binion.com
cpotts@briskman-binion.com

**DISCOVERY TO DEFENDANTS TO BE SERVED WITH THE SUMMONS
AND COMPLAINT AT THE FOLLOWING ADDRESSES:**

The Edgewood Group Limited Partnership
a/k/a The Edgewood Group, LTD
c/o Thomas A. Cadell, Registered Agent
230 East Moulton Street
Decatur, AL  35602

Cumberland Real Estate Services, Inc.
c/o Bert T. Lyles, Registered Agent
2110 Blair Boulevard
Nashville, TN  37212-4902

The Mitchell Company, LLC.
c/o Donald P. Kelly, Jr., Registered Agent
41 W. Interstate 65 Service Road N., Suite 300
Mobile, AL 36608

ELECTRONICALLY FILED
9/4/2020 1:16 PM
02-CV-2020-901867.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

| | | |
|---|---|---|
| ANDREA DIXON, as Personal Representative of the ESTATE OF MAURICE JACKSON, deceased, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | CASE NO.: _____ |
| THE EDGEWOOD GROUP, LTD, d/b/a EDGEWOOD VILLA APARTMENTS; CUMBERLAND REAL ESTATE SERVICES, INC.; THE MITCHELL COMPANY, LLC; and FICTITIOUS PARTIES, | * * * * * * | |
| Defendants. | * | |

## NOTICE OF 30(b)(5) & (6) DEPOSITION

**TO:**       The Edgewood Group Limited Partnership
              Cumberland Real Estate Services, Inc.
              The Mitchell Company, LLC

**DEPONENT:**   The Edgewood Group Limited Partnership

**DATE:**      TBD

**TIME:**      TBD

**LOCATION:**   Briskman & Binion, P.C.
               205 Church Street
               Mobile, Alabama 36602
               (251) 433-7600

**COURT REPORTER:**   Daphne Cotten, CSR (251) 379-0880

YOU WILL PLEASE TAKE NOTICE that the attorneys for Plaintiff,

ANDREA DIXON, will take the deposition *duces tecum* of the above-named deponent before an official court reporter or other person authorized by law to take depositions. The purpose of this deposition is for discovery and/or use as evidence at the trial of this cause and for all other purposes allowed by the Alabama Rules of Civil Procedure. Pursuant to Rule 30(b)(6), *A.R.Civ.P.*, you have a duty to make a designation of the representative(s) to testify regarding the topics stated in Exhibit "A" attached hereto and incorporated by reference.

In addition, pursuant to Rule 30(b)(5), *A.R.Civ.P.*, the deponent is commanded to bring the documents and things requested in the subpoena *duces tecum* identified as Exhibit "B" hereto and incorporated by reference.

/s/Charles J. Potts
DONALD M. BRISKMAN (BRI014)
CHARLES J. POTTS (POT007)
Attorneys for Plaintiff, Andrea Dixon, as
Personal Representative of the Estate of
Maurice Jackson, deceased.

OF COUNSEL:

**BRISKMAN & BINION, P.C.**
Post Office Box 43 (36601)
205 Church Street (36602)
Mobile, Alabama
*T*: 251.433.7600
*F*: 251.433.4485
dbriskman@briskman-binion.com
cpotts@briskman-binion.com

**NOTICE TO DEFENDANTS TO BE SERVED WITH THE SUMMONS AND COMPLAINT AT THE FOLLOWING ADDRESSES:**

The Edgewood Group Limited Partnership
a/k/a The Edgewood Group, LTD
c/o Thomas A. Cadell, Registered Agent
230 East Moulton Street
Decatur, AL  35602

Cumberland Real Estate Services, Inc.
c/o Bert T. Lyles, Registered Agent
2110 Blair Boulevard
Nashville, TN  37212-4902

The Mitchell Company, LLC.
c/o Donald P. Kelly, Jr., Registered Agent
41 W. Interstate 65 Service Road N., Suite 300
Mobile, AL 36608

EXHIBIT A
Designation of Topics Pursuant to Rule 30(b)(6), A.R.Civ.P.

1.    The historical background of the company, including formation, identities of past and current shareholders, owners, directors, and business purpose;

2.    All facts relating to the relationship between deponent and any other Defendant in this case;

3.    All facts relating to the relationship of deponent and Edgewood Villas Apartments, including, but not limited to, the identities of all individuals employed by or acting on behalf of deponent with respect to the operations of Edgewood Villas Apartment; ownership of Edgewood Villas Apartments by deponent or any other entity; and management of Edgewood Villas Apartments by deponent or any other entity;

4.    All facts relating to the deponent's day-to-day activities, including all activities associated with or relating to Edgewood Villas Apartments;

5.    Description and location of all documents, written and electronic communications, contracts, agreements exchanged or between deponent and any other Defendant in the case including, but not limited to, all communications regarding Maurice Jackson and/or the fire that occurred on June 13, 2019, that resulted in his death;

6.    Description of computer operating systems (hardware and software) utilized by deponent in any way in the operation of its business, including, but not limited to, information concerning personal communication devises issued by the deponent to any of its employees and the identities of all computer service technicians and/or vendors;

7.    Identity of all records custodians of the deponent;

8.    Policies and procedures, operating manuals, checklists, and employee handbooks of the deponent with respect to the management and/or operations of apartment complexes, generally, and Edgewood Villas Apartments in Mobile, Alabama, specifically;

9.     All aspects of training of deponent's employees with respect to management and/or operations of apartment complexes, generally, and Edgewood Villas Apartments in Mobile, Alabama, specifically;

10.    Requirements, if any, imposed on deponent by any other Defendant in the case;

11.    All communications with Plaintiff, Andrea Dixon, Plaintiff's son, Maurice Jackson, and/or any member of their family, or their representatives, at any time;

12.    Procedures required and/or followed by deponent when first making contact with a prospective tenant; the showing of the property or apartment; the explanation of the lease terms; inspections of the property or apartment by deponent, or those acting on its behalf, prior to leasing; the execution of the lease by the lessor and lessee; and payment of rent by the tenant, generally, and with respect to Edgewood Villas Apartments in Mobile, Alabama, and Maurice Jackson, specifically;

13.    Deponent's understanding, if any, of statutory and ordinance requirements in Mobile, Alabama, with respect to the condition of leased premises; habitability; lease terms; compliance with applicable building or fire codes; and functioning fire/smoke detectors/alarms, and training, if any, of deponent's employees with respect to same;

14.    Deponent's understanding, if any, with respect to fire/smoke detectors including, but not limited to, purpose; design; types; installation; inspection; maintenance; and replacement;

15.    The lease between Edgewood Villas Apartments/"Cumberland Real Estate" ("lessor") and Maurice Jackson ("lessee") that was in effect on June 13, 2019, including, but not limited to, origin of the lease form, the drafter and legal assistance with the drafting of the lease form, facts involving the execution of the lease with Maurice Jackson;

16.    Maintenance and the existence/content of maintenance records of and relating to the apartment leased by Maurice Jackson at Edgewood Villas Apartments for five (5) years preceding the death of Maurice Jackson on June 13, 2019;

17.    The identity and last known contact information of all tenants/occupants of the apartment leased by Maurice Jackson at Edgewood Villas Apartments for five (5) years preceding the death of Maurice Jackson on June 13, 2019;

18.    All verbal and written complaints and/or requests for maintenance by anyone relating to the apartment leased by Maurice Jackson at Edgewood Villas Apartments for five (5) years preceding the death of Maurice Jackson on June 13, 2019;

19.    The identities and last known contact information of all employees of deponent who have any discoverable knowledge or information concerning the leasing and occupancy of the apartment by Maurice Jackson at Edgewood Villas Apartments for five (5) years preceding the death of Maurice Jackson on June 13, 2019, including, but not limited to, all complaints, requests for maintenance, inspections, and the leasing process with Maurice;

20.    Complaints or concerns, if any, voiced or expressed by anyone to deponent with respect to Maurice Jackson at any time for any reason;

21.    Complaints or concerns, if any, made by deponent to Maurice Jackson at any time for any reason;

22.    Identities and last known contact information of any vendors or independent contractors performing any services for deponent at Edgewood Villas Apartments in Mobile, Alabama, for five (5) years preceding the death of Maurice Jackson on June 13, 2019; including the terms and conditions of any contract or service agreement between deponent and such vendors;

23.    The existence and terms of any indemnity agreements between deponent and any other Defendant in the case;

24.    The existence and terms/limits of any policy of insurance, primary and/or excess/umbrella, that may provide liability coverage to deponent to satisfy any judgment that may be rendered against it in this case;

25.    Facts relating to the fire that caused the death of Maurice Jackson, including information relating to post-fire investigations by deponent;

26.    Testimony explaining all documents produced by deponent in the case;

27.    Facts supporting all defenses asserted by deponent in Answer to the Complaint;

28.    Written and verbal communications, and interaction with, any representatives of the Alabama Fire Marshall's office and/or the Mobile Fire Department at for five (5) years preceding the death of Maurice Jackson on June 13, 2019, and following the fire on the same date that resulted in his death;

29.    Identity of all experts hired by deponent to investigate any aspect of the fire that occurred at Edgewood Villas Apartments in Mobile, Alabama, on June 13, 2019; the facts found by any such expert; the opinions to be offered by such expert(s);

30.    Fire loss risk assessments performed at Edgewood Villas Apartments in Mobile, Alabama, by or on behalf of deponent at any time, or that may be in deponent's possession, including, all building inspection reports that were generated at the time the property was purchased by The Edgewood Group, LTD, and any inspections carried out by the Alabama Fire Marshall's office and/or the Mobile Fire Department;

31.    All post-remedial action, in any, performed by or on behalf of deponent, relating to the fire of June 13, 2019, and the death of Maurice Jackson resulting from same;

32.    All complaints filed with deponent by any tenant of Edgewood Villas Apartments in Mobile, Alabama, that relate, in any way, to fire/smoke detectors within five (5) years preceding June 13, 2019;

32.    Other fire events, and records relating to same, occurring at Edgewood Villas Apartments at any time;

33.    Post-June 13, 2019, inspections of, and reports relating to, Edgewood Villas Apartments in Mobile, Alabama, performed by or on behalf of deponent and/or by or on behalf of the Alabama Fire Marshall's office or the Mobile Fire Department;

34.    Policies and procedures relating to the replacement of fire/smoke detectors in apartment units in Edgewood Villas Apartments in Mobile, Alabama;

35.     Consultations with fire-risk experts prior to the fire of June 13, 2019, relating to Edgewood Villas Apartments in Mobile, Alabama;

36.     Purchase, installation and maintenance information relating to the FireX Model GC fire/smoke detector that was in the apartment leased by Maurice Jackson at Edgewood Villas Apartments in Mobile, Alabama;

37.     Disciplinary action taken by deponent against any person or entity, or by any person or entity against deponent, as a result of the fire of June 13, 2019, at Edgewood Villas Apartments that resulted in the death of Maurice Jackson;

38.     The identity and contact information of the real estate agent representing The Edge Wood Group LTD and/or Edgewood Group Limited Partnership during the purchase of the property identified as 1601 Neshota Drive, Mobile, Alabama;

39.     The scope and extent of all major or significant repairs and renovation work at the Edgewood Villas Apartments from the time that the property was purchased by the Edgewood Group, LTD and/or Edgewood Group Limited Partnership.

EXHIBIT B

Subpoena *duces tecum* Pursuant to Rule 30(b)(5), A.R.Civ.P.

Deponent is commanded to bring the documents and things listed below:

1.    All written (paper and electronic) materials that pertain, in any way, to

     a)    Maurice Jackson; and/or,
     b)    the fire that occurred on June 13, 2019, at Edgewood Villas Apartments
         that resulted in the death of Maurice Jackson;

2.    Policies and procedures; operational or management manuals; daily, weekly or monthly "to do" lists; punch-lists; rental check-lists; and safety guidelines of deponent that relate to the management and/or operation of apartment complexes, generally, and Edgewood Villas Apartments in Mobile, Alabama, in effect for five (5) years preceding the fire of June 13, 2019, to the present, including all documents and things (such as training videos, power point presentations, seminar materials, etc) concerning

     a)    the leasing process with a new or prospective tenant;
     b)    turning over of apartments from one tenant to a new tenant;
     c)    inspections of apartments and apartment fixtures (including fire/smoke detectors);
     d)    maintenance of apartments and apartment fixtures (including fire/smoke detectors);
     e)    replacement of apartment fixtures (including fire/smoke detectors);
     f)    documenting and responding to tenants' complaints or calls for maintenance and/or replacement of apartment fixtures (including fire/smoke detectors);
     g)    training of employees as to any aspect of apartment management and operations, including inspections and maintenance of apartment units generally and fire/smoke detectors, specifically;

3.    All maintenance records, including requests for maintenance, relating directly or indirectly to the apartment rented by Maurice Jackson at Edgewood Villas Apartments in Mobile, Alabama, for five (5) years preceding June 13, 2019;

4.    All purchase documents relating to the FireX model GC fire/smoke detector that was in the apartment rented by Maurice Jackson at Edgewood Villas Apartments

in Mobile, Alabama, on June 13, 2019, including invoices, purchase orders and receipts; manufacturer's recommendations regarding installation, maintenance and replacement of said device; and, user manual relating to same;

5.     All contracts, invoices, purchase orders and/or service agreements with all vendors or independent contractors hired by deponent or those acting on its behalf to inspect, maintain and service any apartment issue or fixture, including fire/smoke detectors, relating directly or indirectly to the apartment rented by Maurice Jackson at Edgewood Villas Apartments in Mobile, Alabama, for five (5) years preceding June 13, 2019;

6.     All contracts whereby deponent is either the indemnitor or the indemnitee with respect to a claim of indemnity asserted by or against deponent as a result of the fire of June 13, 2019, at Edgewood Villas Apartments that resulted in the death of Maurice Jackson;

7.     All inspection reports of Edgewood Villas Apartments (or the predecessor apartment complex by name) located in Mobile, Alabama, associated or in connection with the purchase of the property by The Edgewood Group, LTD;

8.     All inspection reports of Edgewood Villas Apartments located in Mobile, Alabama, generally, with respect to safety and habitability, generally, and/or with respect to the apartment unit rented by Maurice Jackson, specifically, prior to the fire of June 13, 2019, that resulted in the death of Maurice Jackson, including any fire loss risk assessments;

9.     All documents, video and/or audio recordings, emails, letters, correspondence, text messages and internal memos of conversations between deponent and Plaintiff, Andrea Dixon, her son, Maurice Jackson, any family member of Ms. Dixon or Maurice, and any representative of same;

10.    Liability insurance policies (primary and excess/umbrella) of deponent that provides coverage for this claim;

11.    Documents relating to any subsequent remedial measures that deponent, for itself or on behalf of some other person or entity, made at Edgewood Villas Apartments in connection with or as a result of the fire of June 13, 2019, that resulted in the death of Maurice Jackson;

12.    Documents relating to any disciplinary action taken by or against deponent,

or any of deponent's employees, as a result of the fire of June 13, 2019, that resulted in the death of Maurice Jackson;

13.    The fire/smoke detector maintenance and replacement logs for Edgewood Villas Apartments for five (5) years preceding June 13, 2019;

14.    All documents that mention Maurice Jackson by name and/or refer to him indirectly as a tenant of Edgewood Villas Apartments;

15.    Expert reports relating to the fire and/or the fire/smoke detector involved in this case;

16.    All documents and things that deponent claims support any claim or defense asserted by it in this case;

17.    All documents and things that deponent intends to introduce as evidence in the case;

18.    All documents and things relating to major or significant repairs and renovation work at the Edgewood Villas Apartments from the time that the property was purchased by the Edgewood Group, LTD and/or Edgewood Group Limited Partnership.

19.    All closing documents and records in connection with the purchase of the Edgewood Villas property by The Edgewood Group Limited Partnership, a/k/a The Edgewood Group, LTD.

20.    All contracts between deponent and any other named Defendant in the case.

21.    All contracts that were in effect on June 13, 2019, between deponent and any other person or entity that relates, in any way, to the management or operation of Edgewood Villas, including, but not limited to, the installation, inspection, maintenance and replacement of fire/smoke detectors in apartment units at Edgewood Villas.

ELECTRONICALLY FILED
9/4/2020 1:16 PM
02-CV-2020-901867.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

ANDREA DIXON, as Personal   *
Representative of the ESTATE OF   *
MAURICE JACKSON, deceased,   *
  *
  Plaintiff,   *
  *
v.   *   CASE NO.: _____
  *
THE EDGEWOOD GROUP, LTD,   *
d/b/a EDGEWOOD VILLA   *
APARTMENTS; CUMBERLAND   *
REAL ESTATE SERVICES, INC.;   *
THE MITCHELL COMPANY, LLC;   *
and FICTITIOUS PARTIES,   *
  *
  Defendants.   *

## <u>NOTICE OF 30(b)(5) & (6) DEPOSITION</u>

**TO:**   The Edgewood Group Limited Partnership
  Cumberland Real Estate Services, Inc.
  The Mitchell Company, LLC.

**DEPONENT:**   Cumberland Real Estate Services, Inc.

**DATE:**   TBD

**TIME:**   TBD

**LOCATION:**   Briskman & Binion, P.C.
  205 Church Street
  Mobile, Alabama 36602
  (251) 433-7600

**COURT
REPORTER:**   Daphne Cotten, CSR (251) 379-0880

  YOU WILL PLEASE TAKE NOTICE that the attorneys for Plaintiff,

ANDREA DIXON, will take the deposition *duces tecum* of the above-named deponent before an official court reporter or other person authorized by law to take depositions. The purpose of this deposition is for discovery and/or use as evidence at the trial of this cause and for all other purposes allowed by the Alabama Rules of Civil Procedure. Pursuant to Rule 30(b)(6), *A.R.Civ.P.*, you have a duty to make a designation of the representative(s) to testify regarding the topics stated in Exhibit "A" attached hereto and incorporated by reference.

In addition, pursuant to Rule 30(b)(5), *A.R.Civ.P.*, the deponent is commanded to bring the documents and things requested in the subpoena *duces tecum* identified as Exhibit "B" hereto and incorporated by reference.

*/s/Charles J. Potts*
DONALD M. BRISKMAN (BRI014)
CHARLES J. POTTS (POT007)
Attorneys for Plaintiff, Andrea Dixon, as
Personal Representative of the Estate of
Maurice Jackson, deceased.

OF COUNSEL:

**BRISKMAN & BINION, P.C.**
Post Office Box 43 (36601)
205 Church Street (36602)
Mobile, Alabama
*T*:  251.433.7600
*F*:  251.433.4485
dbriskman@briskman-binion.com
cpotts@briskkman-binion.com

**NOTICE TO DEFENDANTS TO BE SERVED WITH THE SUMMONS AND COMPLAINT AT THE FOLLOWING ADDRESSES:**

The Edgewood Group Limited Partnership
a/k/a The Edgewood Group, LTD
c/o Thomas A. Cadell, Registered Agent
230 East Moulton Street
Decatur, AL  35602

Cumberland Real Estate Services, Inc.
c/o Bert T. Lyles, Registered Agent
2110 Blair Boulevard
Nashville, TN  37212-4902

The Mitchell Company, LLC.
c/o Donald P. Kelly, Jr., Registered Agent
41 W. Interstate 65 Service Road N., Suite 300
Mobile, AL 36608

EXHIBIT A
Designation of Topics Pursuant to Rule 30(b)(6), A.R.Civ.P.

1.      The historical background and operating hierarchy of the deponent, including formation, past and current business purpose, identities and job responsibilities of past and current shareholders, owners, directors, managers, employees, agents, independent contractors, and vendors;

2.      All facts relating to the relationship between deponent and any other Defendant in this case;

3.      All facts relating to the relationship of deponent and Edgewood Villas Apartments, including, but not limited to, the identities of all individuals employed by or acting on behalf of deponent with respect to the operations of Edgewood Villas Apartment; ownership of Edgewood Villas Apartments by deponent or any other entity; and management of Edgewood Villas Apartments by deponent or any other entity;

4.      All facts relating to the deponent's day-to-day activities, including all activities associated with or relating to Edgewood Villas Apartments;

5.      Description and location of all documents, written and electronic communications, contracts, agreements exchanged or between deponent and any other Defendant in the case including, but not limited to, all communications regarding Maurice Jackson and/or the fire that occurred on June 13, 2019, that resulted in his death;

6.      Description of computer operating and document management systems (hardware and software) utilized by deponent in any way in the operation of its business, including, but not limited to, information concerning personal communication devises issued by the deponent to any of its employees and the identities of all computer service technicians and/or vendors;

7.      Identity of all records custodians of the deponent and the deponent's records retention policy;

8.      Policies and procedures, operating manuals, checklists, and employee handbooks of the deponent with respect to the management and/or operations of apartment complexes, generally, and Edgewood Villas Apartments in Mobile, Alabama, specifically;

9.      All aspects of training of deponent's employees with respect to management and/or operations of apartment complexes, generally, and Edgewood Villas Apartments in Mobile, Alabama, specifically;

10.     Requirements, if any, imposed on deponent by any other Defendant in the case and requirements, if any, imposed by deponent on any other Defendant in the case;

11.     All communications with Plaintiff, Andrea Dixon, Plaintiff's son, Maurice Jackson, and/or any member of their family, or their representatives, at any time;

12.     Procedures required and/or followed by deponent when first making contact with a prospective tenant; the showing of the property or apartment; the explanation of the lease terms; inspections of the property or apartment by deponent, or those acting on its behalf, prior to leasing; the execution of the lease by the lessor and lessee; and payment of rent by the tenant, generally, and with respect to Edgewood Villas Apartments in Mobile, Alabama, and Maurice Jackson, specifically;

13.     Deponent's understanding, if any, of statutory and ordinance requirements in Mobile, Alabama, with respect to the condition of leased premises; habitability; lease terms; compliance with applicable building or fire codes; reporting requirements; and functioning fire/smoke detectors/alarms, and training, if any, of deponent's employees with respect to same;

14.     Deponent's understanding, if any, with respect to fire/smoke detectors including, but not limited to, purpose; design; operational characteristics; types; installation; inspection; maintenance; and replacement;

15.     The lease between Edgewood Villas Apartments/"Cumberland Real Estate" ("lessor") and Maurice Jackson ("lessee") that was in effect on June 13, 2019, including, but not limited to, origin of the lease form, the drafter and legal assistance with the drafting of the lease form, facts involving the execution of the lease with Maurice Jackson, and deponent's interpretation of lease terms/language;

16.     Maintenance and the existence/content of maintenance records of and relating to the apartment leased by Maurice Jackson at Edgewood Villas Apartments for five (5) years preceding the death of Maurice Jackson on June 13, 2019;

17. The identity and last known contact information of all tenants/occupants of the apartment leased by Maurice Jackson at Edgewood Villas Apartments for five (5) years preceding the death of Maurice Jackson on June 13, 2019;

18. All verbal and written complaints and/or requests for maintenance by anyone relating to the apartment leased by Maurice Jackson at Edgewood Villas Apartments for five (5) years preceding the death of Maurice Jackson on June 13, 2019;

19. The identities and last known contact information of all employees of deponent who have any discoverable knowledge or information concerning the leasing and occupancy of the apartment by Maurice Jackson at Edgewood Villas Apartments for five (5) years preceding the death of Maurice Jackson on June 13, 2019, including, but not limited to, all complaints, requests for maintenance, inspections, and the leasing process with Maurice;

20. Complaints or concerns, if any, voiced or expressed by anyone to deponent with respect to Maurice Jackson at any time for any reason;

21. Complaints or concerns, if any, made by deponent to Maurice Jackson at any time for any reason;

22. Identities and last known contact information of any vendors or independent contractors performing any services for deponent at Edgewood Villas Apartments in Mobile, Alabama, for five (5) years preceding the death of Maurice Jackson on June 13, 2019; including the terms and conditions of any contract or service agreement between deponent and such vendors;

23. The existence and terms of any indemnity agreements between deponent and any other Defendant in the case;

24. The existence and terms/limits of any policy of insurance, primary and/or excess/umbrella, that may provide liability coverage to deponent to satisfy any judgment that may be rendered against it in this case;

25. Facts relating to the fire that caused the death of Maurice Jackson, including information relating to post-fire investigations by deponent;

26.     Testimony explaining all documents produced by deponent in the case;

27.     Facts supporting all defenses asserted by deponent in Answer to the Complaint;

28.     Written and verbal communications, and interaction with, any representatives of the Alabama Fire Marshall's office and/or the Mobile Fire Department at for five (5) years preceding the death of Maurice Jackson on June 13, 2019, and following the fire on the same date that resulted in his death;

29.     Identity of all experts hired by deponent to investigate any aspect of the fire that occurred at Edgewood Villas Apartments in Mobile, Alabama, on June 13, 2019; the facts found by any such expert; the opinions to be offered by such expert(s); and the existence and description of all communications and reports of and between deponent and/or its lawyers and any such expert;

30.     Fire loss risk assessments performed at Edgewood Villas Apartments in Mobile, Alabama, by or on behalf of deponent at any time, or that may be in deponent's possession, including, all building inspection reports that were generated at the time the property was purchased by The Edgewood Group Limited Partnership, a/k/a The Edgewood Group, LTD, and any inspections carried out by the Alabama Fire Marshall's office and/or the Mobile Fire Department;

31.     All post-remedial action, in any, performed by or on behalf of deponent, relating to the fire of June 13, 2019, and the death of Maurice Jackson resulting from same;

32.     All complaints filed with deponent by any tenant of Edgewood Villas Apartments in Mobile, Alabama, that relate, in any way, to fire/smoke detectors within five (5) years preceding June 13, 2019;

32.     Other fire events, and records relating to same, occurring at Edgewood Villas Apartments at any time;

33.     Post-June 13, 2019, inspections of, and reports relating to, Edgewood Villas Apartments in Mobile, Alabama, performed by or on behalf of deponent and/or by or on behalf of the Alabama Fire Marshall's office or the Mobile Fire Department;

34.     Policies and procedures relating to the replacement of fire/smoke detectors in apartment units in Edgewood Villas Apartments in Mobile, Alabama;

35.     Consultations with fire-risk experts prior to the fire of June 13, 2019, relating to Edgewood Villas Apartments in Mobile, Alabama;

36.     Purchase, installation and maintenance information relating to the FireX Model GC fire/smoke detector that was in the apartment leased by Maurice Jackson at Edgewood Villas Apartments in Mobile, Alabama;

37.     Disciplinary action taken by deponent against any person or entity, or by any person or entity against deponent, as a result of the fire of June 13, 2019, at Edgewood Villas Apartments that resulted in the death of Maurice Jackson;

38.     The identity and contact information of the real estate agent representing The Edgewood Group Limited Partnership, a/k/a The Edgewood Group, LTD, during the purchase of the property identified as 1601 Neshota Drive, Mobile, Alabama;

39.     The scope and extent of all major or significant repairs and renovation work at the Edgewood Villas Apartments from the time that the property was purchased by The Edgewood Group Limited Partnership, a/k/a The Edgewood Group, LTD.

EXHIBIT B

Subpoena *duces tecum* Pursuant to Rule 30(b)(5), A.R.Civ.P.

Deponent is commanded to bring the documents and things listed below:

1.     All written (paper and electronic) materials that pertain, in any way, to

      a)     Maurice Jackson; and/or,
      b)     the fire that occurred on June 13, 2019, at Edgewood Villas Apartments that resulted in the death of Maurice Jackson;

2.     Policies and procedures; operational or management manuals; daily, weekly or monthly "to do" lists; punch-lists; rental check-lists; and safety guidelines of deponent that relate to the management and/or operation of apartment complexes, generally, and Edgewood Villas Apartments in Mobile, Alabama, in effect for five (5) years preceding the fire of June 13, 2019, to the present, including all documents and things (such as training videos, power point presentations, seminar materials, etc) concerning

      a)     the leasing process with a new or prospective tenant;
      b)     turning over of apartments from one tenant to a new tenant;
      c)     inspections of apartments and apartment fixtures (including fire/smoke detectors);
      d)     maintenance of apartments and apartment fixtures (including fire/smoke detectors);
      e)     replacement of apartment fixtures (including fire/smoke detectors);
      f)     documenting and responding to tenants' complaints or calls for maintenance and/or replacement of apartment fixtures (including fire/smoke detectors);
      g)     training of employees as to any aspect of apartment management and operations, including inspections and maintenance of apartment units generally and fire/smoke detectors, specifically;

3.     All maintenance records, including requests for maintenance, relating directly or indirectly to the apartment rented by Maurice Jackson at Edgewood Villas Apartments in Mobile, Alabama, for five (5) years preceding June 13, 2019;

4.     All purchase documents relating to the FireX model GC fire/smoke detector

that was in the apartment rented by Maurice Jackson at Edgewood Villas Apartments in Mobile, Alabama, on June 13, 2019, including invoices, purchase orders and receipts; manufacturer's recommendations regarding installation, maintenance and replacement of said device; and, user manual relating to same;

5.     All contracts, invoices, purchase orders and/or service agreements with all vendors or independent contractors hired by deponent or those acting on its behalf to inspect, maintain and service any apartment issue or fixture, including fire/smoke detectors, relating directly or indirectly to the apartment rented by Maurice Jackson at Edgewood Villas Apartments in Mobile, Alabama, for five (5) years preceding June 13, 2019;

6.     All contracts whereby deponent is either the indemnitor or the indemnitee with respect to a claim of indemnity asserted by or against deponent as a result of the fire of June 13, 2019, at Edgewood Villas Apartments that resulted in the death of Maurice Jackson;

7.     All inspection reports of Edgewood Villas Apartments (or the predecessor apartment complex by name) located in Mobile, Alabama, associated or in connection with the purchase of the property by The Edgewood Group, LTD;

8.     All inspection reports of Edgewood Villas Apartments located in Mobile, Alabama, generally, with respect to safety and habitability, generally, and/or with respect to the apartment unit rented by Maurice Jackson, specifically, prior to the fire of June 13, 2019, that resulted in the death of Maurice Jackson, including any fire loss risk assessments;

9.     All documents, video and/or audio recordings, emails, letters, correspondence, text messages and internal memos of conversations between deponent and Plaintiff, Andrea Dixon, her son, Maurice Jackson, any family member of Ms. Dixon or Maurice, and any representative of same;

10.     Liability insurance policies (primary and excess/umbrella) of deponent that provides coverage for this claim;

11.     Documents relating to any subsequent remedial measures that deponent, for itself or on behalf of some other person or entity, made at Edgewood Villas Apartments in connection with or as a result of the fire of June 13, 2019, that resulted in the death of Maurice Jackson;

12.     Documents relating to any disciplinary action taken by or against deponent, or any of deponent's employees, as a result of the fire of June 13, 2019, that resulted in the death of Maurice Jackson;

13.     The fire/smoke detector maintenance and replacement logs for Edgewood Villas Apartments for five (5) years preceding June 13, 2019;

14.     All documents that mention Maurice Jackson by name and/or refer to him indirectly as a tenant of Edgewood Villas Apartments;

15.     Expert reports relating to the fire and/or the fire/smoke detector involved in this case;

16.     All documents and things that deponent claims supports any claim or defense asserted by it in this case;

17.     All documents and things that deponent intends to introduce as evidence in the case;

18.     Documents that relate to major or significant repairs and renovation work at the Edgewood Villas Apartments from the time that the property was purchased by The Edgewood Group Limited Partnership, a/k/a The Edgewood Group, LTD, to the present.

19.     All closing documents and records in connection with the purchase of the Edgewood Villas property by The Edgewood Group Limited Partnership, a/k/a The Edgewood Group, LTD.

20.     All contracts between deponent and any other named Defendant in the case.

21.     All contracts that were in effect on June 13, 2019, between deponent and any other person or entity that relates, in any way, to the management or operation of Edgewood Villas, including, but not limited to, the installation, inspection, maintenance and replacement of fire/smoke detectors in apartment units at Edgewood Villas.

ELECTRONICALLY FILED
9/4/2020 1:16 PM
02-CV-2020-901867.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

| | | |
|---|---|---|
| ANDREA DIXON, as Personal Representative of the ESTATE OF MAURICE JACKSON, deceased, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | CASE NO.: _____ |
| THE EDGEWOOD GROUP, LTD, d/b/a EDGEWOOD VILLA APARTMENTS; CUMBERLAND REAL ESTATE SERVICES, INC.; THE MITCHELL COMPANY, LLC; and FICTITIOUS PARTIES, | * * * * * * * | |
| Defendants. | * | |

## <u>NOTICE OF 30(b)(5) & (6) DEPOSITION</u>

**TO:**  The Edgewood Group Limited Partnership
Cumberland Real Estate Services, Inc.
The Mitchell Company, LLC

**DEPONENT:**  The Mitchell Company, LLC

**DATE:**  TBD

**TIME:**  TBD

**LOCATION:**  Briskman & Binion, P.C.
205 Church Street
Mobile, Alabama 36602
(251) 433-7600

**COURT REPORTER:**  Daphne Cotten, CSR (251) 379-0880

YOU WILL PLEASE TAKE NOTICE that the attorneys for Plaintiff,

ANDREA DIXON, will take the deposition *duces tecum* of the above-named deponent before an official court reporter or other person authorized by law to take depositions. The purpose of this deposition is for discovery and/or use as evidence at the trial of this cause and for all other purposes allowed by the Alabama Rules of Civil Procedure. Pursuant to Rule 30(b)(6), *A.R.Civ.P.*, you have a duty to make a designation of the representative(s) to testify regarding the topics stated in Exhibit "A" attached hereto and incorporated by reference.

In addition, pursuant to Rule 30(b)(5), *A.R.Civ.P.*, the deponent is commanded to bring the documents and things requested in the subpoena *duces tecum* identified as Exhibit "B" hereto and incorporated by reference.

/s/Charles J. Potts
DONALD M. BRISKMAN (BRI014)
CHARLES J. POTTS (POT007)
Attorneys for Plaintiff, Andrea Dixon, as
Personal Representative of the Estate of
Maurice Jackson, deceased.

OF COUNSEL:

**BRISKMAN & BINION, P.C.**
Post Office Box 43 (36601)
205 Church Street (36602)
Mobile, Alabama
*T*: 251.433.7600
*F*: 251.433.4485
dbriskman@briskman-binion.com
cpotts@briskman-binion.com

**NOTICE TO DEFENDANTS TO BE SERVED WITH THE SUMMONS AND COMPLAINT AT THE FOLLOWING ADDRESSES:**

The Edgewood Group Limited Partnership
a/k/a The Edgewood Group, LTD
c/o Thomas A. Cadell, Registered Agent
230 East Moulton Street
Decatur, AL  35602

Cumberland Real Estate Services, Inc.
c/o Bert T. Lyles, Registered Agent
2110 Blair Boulevard
Nashville, TN  37212-4902

The Mitchell Company, LLC.
c/o Donald P. Kelly, Jr., Registered Agent
41 W. Interstate 65 Service Road N., Suite 300
Mobile, AL 36608

EXHIBIT A
Designation of Topics Pursuant to Rule 30(b)(6), A.R.Civ.P.

1.     The historical background and operating hierarchy of the deponent, including formation, past and current business purpose, identities and job responsibilities of past and current shareholders, owners, directors, managers, employees, agents, independent contractors, and vendors;

2.     All facts relating to the relationship between deponent and any other Defendant in this case;

3.      All facts relating to the relationship of deponent and Edgewood Villas Apartments, including, but not limited to, the identities of all individuals employed by or acting on behalf of deponent with respect to the operations of Edgewood Villas Apartment; ownership of Edgewood Villas Apartments by deponent or any other entity; and management of Edgewood Villas Apartments by deponent or any other entity;

4.     All facts relating to the deponent's day-to-day activities, including all activities associated with or relating to Edgewood Villas Apartments;

5.     Description and location of all documents, written and electronic communications, contracts, agreements exchanged or between deponent and any other Defendant in the case including, but not limited to, all communications regarding Maurice Jackson and/or the fire that occurred on June 13, 2019, that resulted in his death;

6.     Description of computer operating and document management systems (hardware and software) utilized by deponent in any way in the operation of its business, including, but not limited to, information concerning personal communication devises issued by the deponent to any of its employees and the identities of all computer service technicians and/or vendors;

7.     Identity of all records custodians of the deponent and the deponent's records retention policy;

8.     Policies and procedures, operating manuals, checklists, and employee handbooks of the deponent with respect to the management and/or operations of apartment complexes, generally, and Edgewood Villas Apartments in Mobile, Alabama, specifically;

9.     All aspects of training of deponent's employees with respect to management and/or operations of apartment complexes, generally, and Edgewood Villas Apartments in Mobile, Alabama, specifically;

10.     Requirements, if any, imposed on deponent by any other Defendant in the case and requirements, if any, imposed by deponent on any other Defendant in the case;

11.     All communications with Plaintiff, Andrea Dixon, Plaintiff's son, Maurice Jackson, and/or any member of their family, or their representatives, at any time;

12.     Procedures required and/or followed by deponent when first making contact with a prospective tenant; the showing of the property or apartment; the explanation of the lease terms; inspections of the property or apartment by deponent, or those acting on its behalf, prior to leasing; the execution of the lease by the lessor and lessee; and payment of rent by the tenant, generally, and with respect to Edgewood Villas Apartments in Mobile, Alabama, and Maurice Jackson, specifically;

13.     Deponent's understanding, if any, of statutory and ordinance requirements in Mobile, Alabama, with respect to the condition of leased premises; habitability; lease terms; compliance with applicable building or fire codes; reporting requirements; and functioning fire/smoke detectors/alarms, and training, if any, of deponent's employees with respect to same;

14.     Deponent's understanding, if any, with respect to fire/smoke detectors including, but not limited to, purpose; design; operational characteristics; types; installation; inspection; maintenance; and replacement;

15.     The lease between Edgewood Villas Apartments/"Cumberland Real Estate" ("lessor") and Maurice Jackson ("lessee") that was in effect on June 13, 2019, including, but not limited to, origin of the lease form, the drafter and legal assistance with the drafting of the lease form, facts involving the execution of the lease with Maurice Jackson, and deponent's interpretation of lease terms/language;

16.     Maintenance and the existence/content of maintenance records of and relating to the apartment leased by Maurice Jackson at Edgewood Villas Apartments for five (5) years preceding the death of Maurice Jackson on June 13, 2019;

17. The identity and last known contact information of all tenants/occupants of the apartment leased by Maurice Jackson at Edgewood Villas Apartments for five (5) years preceding the death of Maurice Jackson on June 13, 2019;

18. All verbal and written complaints and/or requests for maintenance by anyone relating to the apartment leased by Maurice Jackson at Edgewood Villas Apartments for five (5) years preceding the death of Maurice Jackson on June 13, 2019;

19. The identities and last known contact information of all employees of deponent who have any discoverable knowledge or information concerning the leasing and occupancy of the apartment by Maurice Jackson at Edgewood Villas Apartments for five (5) years preceding the death of Maurice Jackson on June 13, 2019, including, but not limited to, all complaints, requests for maintenance, inspections, and the leasing process with Maurice;

20. Complaints or concerns, if any, voiced or expressed by anyone to deponent with respect to Maurice Jackson at any time for any reason;

21. Complaints or concerns, if any, made by deponent to Maurice Jackson at any time for any reason;

22. Identities and last known contact information of any vendors or independent contractors performing any services for deponent at Edgewood Villas Apartments in Mobile, Alabama, for five (5) years preceding the death of Maurice Jackson on June 13, 2019; including the terms and conditions of any contract or service agreement between deponent and such vendors;

23. The existence and terms of any indemnity agreements between deponent and any other Defendant in the case;

24. The existence and terms/limits of any policy of insurance, primary and/or excess/umbrella, that may provide liability coverage to deponent to satisfy any judgment that may be rendered against it in this case;

25. Facts relating to the fire that caused the death of Maurice Jackson, including information relating to post-fire investigations by deponent;

26.     Testimony explaining all documents produced by deponent in the case;

27.     Facts supporting all defenses asserted by deponent in Answer to the Complaint;

28.     Written and verbal communications, and interaction with, any representatives of the Alabama Fire Marshall's office and/or the Mobile Fire Department at for five (5) years preceding the death of Maurice Jackson on June 13, 2019, and following the fire on the same date that resulted in his death;

29.     Identity of all experts hired by deponent to investigate any aspect of the fire that occurred at Edgewood Villas Apartments in Mobile, Alabama, on June 13, 2019; the facts found by any such expert; the opinions to be offered by such expert(s); and the existence and description of all communications and reports of and between deponent and/or its lawyers and any such expert;

30.     Fire loss risk assessments performed at Edgewood Villas Apartments in Mobile, Alabama, by or on behalf of deponent at any time, or that may be in deponent's possession, including, all building inspection reports that were generated at the time the property was purchased by The Edgewood Group Limited Partnership, a/k/a The Edgewood Group, LTD, and any inspections carried out by the Alabama Fire Marshall's office and/or the Mobile Fire Department;

31.     All post-remedial action, in any, performed by or on behalf of deponent, relating to the fire of June 13, 2019, and the death of Maurice Jackson resulting from same;

32.     All complaints filed with deponent by any tenant of Edgewood Villas Apartments in Mobile, Alabama, that relate, in any way, to fire/smoke detectors within five (5) years preceding June 13, 2019;

32.     Other fire events, and records relating to same, occurring at Edgewood Villas Apartments at any time;

33.     Post-June 13, 2019, inspections of, and reports relating to, Edgewood Villas Apartments in Mobile, Alabama, performed by or on behalf of deponent and/or by or on behalf of the Alabama Fire Marshall's office or the Mobile Fire Department;

34.     Policies and procedures relating to the replacement of fire/smoke detectors in apartment units in Edgewood Villas Apartments in Mobile, Alabama;

35.     Consultations with fire-risk experts prior to the fire of June 13, 2019, relating to Edgewood Villas Apartments in Mobile, Alabama;

36.     Purchase, installation and maintenance information relating to the FireX Model GC fire/smoke detector that was in the apartment leased by Maurice Jackson at Edgewood Villas Apartments in Mobile, Alabama;

37.     Disciplinary action taken by deponent against any person or entity, or by any person or entity against deponent, as a result of the fire of June 13, 2019, at Edgewood Villas Apartments that resulted in the death of Maurice Jackson;

38.     The identity and contact information of the real estate agent representing The Edgewood Group Limited Partnership, a/k/a The Edgewood Group, LTD, during the purchase of the property identified as 1601 Neshota Drive, Mobile, Alabama;

39.     The scope and extent of all major or significant repairs and renovation work at the Edgewood Villas Apartments from the time that the property was purchased by The Edgewood Group Limited Partnership, a/k/a The Edgewood Group, LTD.

EXHIBIT B

Subpoena *duces tecum* Pursuant to Rule 30(b)(5), A.R.Civ.P.

Deponent is commanded to bring the documents and things listed below:

1.     All written (paper and electronic) materials that pertain, in any way, to

   a)      Maurice Jackson; and/or,
   b)      the fire that occurred on June 13, 2019, at Edgewood Villas Apartments that resulted in the death of Maurice Jackson;

2.     Policies and procedures; operational or management manuals; daily, weekly or monthly "to do" lists; punch-lists; rental check-lists; and safety guidelines of deponent that relate to the management and/or operation of apartment complexes, generally, and Edgewood Villas Apartments in Mobile, Alabama, in effect for five (5) years preceding the fire of June 13, 2019, to the present, including all documents and things (such as training videos, power point presentations, seminar materials, etc) concerning

   a)      the leasing process with a new or prospective tenant;
   b)      turning over of apartments from one tenant to a new tenant;
   c)      inspections of apartments and apartment fixtures (including fire/smoke detectors);
   d)      maintenance of apartments and apartment fixtures (including fire/smoke detectors);
   e)      replacement of apartment fixtures (including fire/smoke detectors);
   f)      documenting and responding to tenants' complaints or calls for maintenance and/or replacement of apartment fixtures (including fire/smoke detectors);
   g)      training of employees as to any aspect of apartment management and operations, including inspections and maintenance of apartment units generally and fire/smoke detectors, specifically;

3.     All maintenance records, including requests for maintenance, relating directly or indirectly to the apartment rented by Maurice Jackson at Edgewood Villas Apartments in Mobile, Alabama, for five (5) years preceding June 13, 2019;

4.     All purchase documents relating to the FireX model GC fire/smoke detector

that was in the apartment rented by Maurice Jackson at Edgewood Villas Apartments in Mobile, Alabama, on June 13, 2019, including invoices, purchase orders and receipts; manufacturer's recommendations regarding installation, maintenance and replacement of said device; and, user manual relating to same;

5.      All contracts, invoices, purchase orders and/or service agreements with all vendors or independent contractors hired by deponent or those acting on its behalf to inspect, maintain and service any apartment issue or fixture, including fire/smoke detectors, relating directly or indirectly to the apartment rented by Maurice Jackson at Edgewood Villas Apartments in Mobile, Alabama, for five (5) years preceding June 13, 2019;

6.      All contracts whereby deponent is either the indemnitor or the indemnitee with respect to a claim of indemnity asserted by or against deponent as a result of the fire of June 13, 2019, at Edgewood Villas Apartments that resulted in the death of Maurice Jackson;

7.      All inspection reports of Edgewood Villas Apartments (or the predecessor apartment complex by name) located in Mobile, Alabama, associated or in connection with the purchase of the property by The Edgewood Group, LTD;

8.      All inspection reports of Edgewood Villas Apartments located in Mobile, Alabama, generally, with respect to safety and habitability, generally, and/or with respect to the apartment unit rented by Maurice Jackson, specifically, prior to the fire of June 13, 2019, that resulted in the death of Maurice Jackson, including any fire loss risk assessments;

9.      All documents, video and/or audio recordings, emails, letters, correspondence, text messages and internal memos of conversations between deponent and Plaintiff, Andrea Dixon, her son, Maurice Jackson, any family member of Ms. Dixon or Maurice, and any representative of same;

10.     Liability insurance policies (primary and excess/umbrella) of deponent that provides coverage for this claim;

11.     Documents relating to any subsequent remedial measures that deponent, for itself or on behalf of some other person or entity, made at Edgewood Villas Apartments in connection with or as a result of the fire of June 13, 2019, that resulted in the death of Maurice Jackson;

12.     Documents relating to any disciplinary action taken by or against deponent, or any of deponent's employees, as a result of the fire of June 13, 2019, that resulted in the death of Maurice Jackson;

13.     The fire/smoke detector maintenance and replacement logs for Edgewood Villas Apartments for five (5) years preceding June 13, 2019;

14.     All documents that mention Maurice Jackson by name and/or refer to him indirectly as a tenant of Edgewood Villas Apartments;

15.     Expert reports relating to the fire and/or the fire/smoke detector involved in this case;

16.     All documents and things that deponent claims support any claim or defense asserted by it in this case;

17.     All documents and things that deponent intends to introduce as evidence in the case;

18.     Documents that relate to major or significant repairs and renovation work at the Edgewood Villas Apartments from the time that the property was purchased by The Edgewood Group Limited Partnership, a/k/a The Edgewood Group, LTD, to the present.

19.     All closing documents and records in connection with the purchase of the Edgewood Villas property by The Edgewood Group Limited Partnership, a/k/a The Edgewood Group, LTD.

20.     All contracts between deponent and any other named Defendant in the case.

21.     All contracts that were in effect on June 13, 2019, between deponent and any other person or entity that relates, in any way, to the management or operation of Edgewood Villas, including, but not limited to, the installation, inspection, maintenance and replacement of fire/smoke detectors in apartment units at Edgewood Villas.